CARLSON, Justice,
for the Court.
¶ 1. The Mississippi Commission on Judicial Performance (Commission) has recommended to this Court that Ted L. Blakeney, a Simpson County Justice Court Judge, be publicly reprimanded for judicial misconduct based on (1) his allowing photographic coverage of his court proceedings and (2) his failure to wear a judicial robe in the courtroom. While we agree with the Commission that the judge’s conduct is sanctionable, we disagree with the Commission’s recommendation of a public reprimand and instead find that the appropriate sanction in this case is a private reprimand. In so finding, we acknowledge here that in a prior case, this same judge received a public reprimand from this Court for judicial misconduct. Miss. Comm’n on Judicial Performance v. Blakeney, 848 So.2d 824 (Miss.2003) (ex parte communications with investigating officer and criminal defendants).[1]
*523 FACTS AND PROCEEDINGS BEFORE THE COMMISSION
¶2. On February 5, 2003, around 5:00 p.m., Judge Blakeney received a telephone call requesting that he conduct an initial appearance at the Simpson County Jail in Mendenhall. The Sheriffs office sought an initial appearance for four defendants charged with felony drug offenses. After leaving his day job, Judge Blakeney went home to clean up before arriving to conduct the initial appearance at the county jail. He arrived between 5:30 and 6:00 p.m., which was too late to gain access to his Justice Court office.[2] By the time he arrived for court, the judge learned that the location of the initial appearance had been moved to the circuit courtroom in the Simpson County Courthouse.
¶ 3. It was the judge’s custom to conduct initial appearances at the justice court building, but these initial appearances were occasionally conducted at the jail for security reasons. Judge Blakeney would normally keep his robe in his office at the justice court, and when he conducted proceedings at the jail, he would not wear a robe. This particular scheduled court proceeding was the first occasion on which the judge had conducted a hearing in the circuit courtroom.
¶ 4. Agent Randy Crawford, an employee of the Simpson County Sheriffs Department, and the commander of the Capitol (sic) City Metro Narcotics Task Force, was present in court for the initial appearances on the day in .question. It was Agent Crawford’s normal procedure to inform the media of drug arrests so that pictures could be taken of the prisoners being escorted from the jail to court. According to Agent Crawford:
[W]e do like to have the press to see pictures and stuff like that. And we lead them across. They usually take pictures that we — we. tell — we call the paper and let them take pictures when we’re leading them en route. And, plus, we’ve had it on the news, the camera— like Channel 3, 12, 16 — lead them over there.
On this particular occasion (and consistent with similar occasions in the past), Agent Crawford contacted Forrest Hailey, an employee of the Simpson Publishing Company, which publishes two local newspapers, the Magee Courier and the Simpson County News. However, since Hailey spent time outside photographing the defendants as they were being transported from the jail to the courtroom, he arrived inside, the courtroom after the proceedings had begun and positioned himself by Agent Crawford. He entered through the same door utilized by the judge and the agent for entry into the courtroom. The door, was located behind the judge’s , bench and when a person entered the courtroom through this door, that person would initially be hidden from the judge’s view by a wall. At some point during the court proceedings, Hailey informed Agent Crawford that he wished to take a picture. With Agent Crawford’s encouragement, Hailey stepped from .behind the wall and walked up behind the bench and took two or three photographs. of the defendants over the left shoulder of the judge. One of these photographs was subsequently published in the newspaper.[3]
*524 ¶ 5. On June 25, 2003, the Commission, by and through its Executive Director, filed a Formal Complaint charging Judge Blakeney with judicial misconduct constituting willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, thus causing such alleged conduct to be actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890. This complaint alleged that the judge had violated the then-existing provisions of the Mississippi Code of Judicial Conduct in that (1) the judge had allowed his court proceedings to be photographed, with a photograph eventually be published in the local newspaper, and (2) the judge had failed to wear a robe while presiding in open court.[4] The judge responded and on February 13, 2004, a hearing on the complaint was held before a three-member Committee duly appointed by the Commission Chair. Subsequent to this hearing, the Committee issued its Findings of Fact, Conclusions of Law and Recommendations wherein it unanimously recommended to the Commission that the judge be privately reprimanded. The Commission’s counsel objected and urged the Commission to instead publicly reprimand the judge. On May 5, 2004, pursuant to a prior unanimous vote of the Commission members present at a duly called meeting, the Commission entered its Findings of Fact, Conclusion of Law and Recommendation wherein the Commission recommended to this Court that the judge be publicly reprimanded and assessed the costs of the proceeding.
¶ 6. After the Commission filed its Recommendation and other necessary papers with this Court, the judge, through counsel, filed a Notice of Non-Contention inasmuch as the Commission’s recommendation for public reprimand had been reported by the local media in Simpson County. Judge Blakeney stated that since “the public is already aware of the Commission’s recommendation, [he] no longer wishe[d] to contest the recommendations of the Commission.” Notwithstanding the judge’s pronouncement that he would not contest the Commission’s recommendations, this Court is still required, under our accepted standard of review, to consider whether to accept the Commission’s findings of fact and recommendation.
DISCUSSION
¶ 7. Succinctly stated, the issues presented today are (1) whether the judge’s conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Art. 6, § 177A, Miss. Const., 1890, and if so (2) what is the appropriate sanction to be imposed.
¶ 8. We first consider the appropriate standard of review. When reviewing matters involving alleged judicial misconduct, this Court is required to proceed as follows:
Based upon a review of the entire record, the Supreme Court shall prepare and publish a written opinion and judgment directing such disciplinary action, *525 if any, as it finds just and proper. The Supreme Court may accept, .reject, or modify, in whole or in part, the findings and recommendation of the Commission. In the event that more than one recommendation for discipline of the judge is filed, the Supreme Court may render a single decision or impose a single sanction with respect to all recommendations. Mississippi Comm’n on Judicial Performance v. Bishop, 761 So.2d 195, 197-98 (Miss.2000). In judicial misconduct proceedings, this Court is the trier of fact and alone possesses the power to impose sanctions. Mississippi Comm’n on Judicial Performance v. Neal, 774 So.2d 414, 416 (Miss.2000). Although this Court has an obligation to conduct an independent inquiry, we nonetheless give great weight to the findings of the Commission. Neal, 774 So.2d at 416.
Miss. Comm’n on Judicial Performance v. Carr, 786 So.2d 1055, 1058 (Miss.2001). This Court conducts a de novo review of judicial misconduct proceedings. Miss. Comm’n on Judicial Performance v. Vess, 692 So.2d 80, 83 (Miss.1997). We are certainly not bound by the Commission’s findings and recommendations; however, when the Commission’s findings are based on clear and convincing evidence, they are afforded great deference. Miss. Comm’n on Judicial Performance v. Lewis, 801 So.2d 704, 707 (Miss.2001); Miss. Comm’n on Judicial Performance v. Bishop, 761 So.2d 195, 198 (Miss.2000). While giving great deference to the Commission’s findings, we are also charged, to render independent judgment. In re Collins, 524 So.2d 553, 556 (Miss.1987). This Court has the sole power to impose sanctions when based on clear and convincing evidence. Miss. Comm’n on Judicial Performance v. U.U. 875 So.2d 1083, 1087(¶ 9) (Miss.2004) (citing Miss. Comm’n on Judicial Perform. v. Wells, 794 So.2d 1030, 1032(¶ 5) (Miss.2001)). Miss. Comm’n Judicial Performance v. Fletcher, 686 So.2d 1075, 1078 (Miss.1996); In re Garner, 466 So.2d 884, 885 (Miss.1985).
¶ 9. We now return to the record. Hai-ley’s deposition testimony was introduced at the hearing before the Commission. Hailey testified..that Judge Blakeney was aware of his presence in the courtroom. Hailey further testified that he was standing next to Crawford and then told Crawford that he would like to get a picture of the defendants standing in front of the bench, to which Crawford replied: “Step up there and get you one.” . Hailey then testified that he walked up on the platform behind the bench and took several photographs with his digital camera with flash and that Judge Blakeney stated: “Don’t make me look bad.”[5]
¶ 10. Both Agent- Crawford and Judge Blakeney testified at the hearing. Judge Blakeney testified that he was not aware that Hailey was in the courtroom and that he thus knew nothing about the photograph until he saw it in the local newspaper. However Agent Crawford’s testi *526 mony is especially intriguing. On direct examination by the judge’s counsel, Agent Crawford testified that Hailey never inquired about taking a picture in the courtroom, and that all of a sudden, Hai-ley walked up behind the judge and took the picture, then immediately left the courtroom. However, during cross-examination by the Commission’s counsel, Crawford denied knowing that Hailey had taken a picture, and then the following colloquy occurred:
Q. Do you know when the pictures were taken?
A. No ma’am, don’t know anything about that.
¶ 11. Based on the evidence'presented, the Committee issued its findings of fact along with a recommendation to the Commission that the judge be privately reprimanded. Although lengthy, the Committee’s findings of fact, without doubt based on clear and convincing evidence as revealed in the record, are critical to our determination here today, and are thus set out verbatim:
On February 5, 2003, the Respondent, in his official capacity as a Justice Court Judge for Simpson County, Mississippi, conducted an initial appearance in the Circuit Courtroom of the [Simpson] County Courthouse, Mendenhall, Mississippi. The proceedings began at approximately 5:30 to 6:00 p.m. Present at the hearing were the Respondent, the four (4) felony defendants, Agent Randy Crawford, and Forrest Hailey, a staff writer, sports reporter and photographer with Simpson Publishing Company, publisher of the Magee Courier and the Simpson County News.
Respondent had been contacted by the Justice Court Clerk around 5:00 p.m. on the date in question and advised that the Sheriffs office was requesting that an initial appearance be conducted for the four defendants that evening. As Respondent was at work at the time, he advised the Clerk that he would go home, clean up and would thereafter go to the County jail to conduct the initial appearance since the Justice Court office closed at five o’clock.
It is the usual and customary practice in Simpson County that an initial appearance is conducted in the Justice Court building. That is where Respondent keeps his judicial robe. However, initial appearances are occasionally, although not frequently, conducted in the County jail. Respondent does not have a judicial robe in the County jail. This was the first time Respondent has conducted an initial hearing in the Circuit Courtroom. As such, Respondent also did not have a judicial robe located in the Circuit Courtroom nor in its adjacent chambers. In addition, due to recent renovations to the Justice Court office, Respondent did not have a key with which to gain entry to the office to obtain his robe.
It is the usual and customary practice of Agent Crawford to contact Forrest Hai-ley when an initial appearance is scheduled in drug cases. Once Mr. Hailey is contacted, the Sheriffs office parades the defendant(s) approximately one hundred yards from the jail to the Justice Court office so as to allow Mr. Hailey ample opportunity to make photographs for the local newspapers. Photographs are normally taken by Mr. Hailey during these orchestrated processionals.
On the date in question, February 5, 2003, Forrest Hailey entered the Circuit Courtroom after the processional was completed and the hearings had begun. He had his digital camera with him and stood to the left of the Respondent and talked with Agent Crawford. Respondent was aware that Mr. Hailey was *527 present in the Courtroom. Mr. Hailey stated to Agent Crawford, “I sure would like to have a picture,” to which Agent Crawford replied, “Step up there an get one.” Mr. Hailey did just that.
Mr. Hailey approached the Respondent from his left, walked up on the platform, stepped behind the bench and took several photographs with his digital camera using the flash attachment. Although Mr. Hailey never had a conversation with Respondent on the date in question, he does recall the Respondent stating to him, “Don’t make me look bad.”
Agent Crawford’s testimony that Mr. Hailey did not ask him about taking the photograph and that he did not know that Mr. Hailey was going to take the photograph is disingenuous, at best, and certainly against the overwhelming weight of the evidence. Agent Crawford testified that it was his usual practice to contact Mr. Hailey and then to parade the suspects from the county jail to the Justice Court Office so that Mr. Hailey could take photographs for the local papers. Agent Crawford did, in fact, contact Mr. Hailey just before the initial appearance for that very purpose. Further Agent Crawford contradicted himself in his testimony. On direct examination by the Commission, he testified that Mr. Hailey took the photograph and then left the Courtroom. However, on cross-examination by counsel for the Respondent, he testified that he did not notice a flash, did not hear a camera, and did not even know Mr. Hailey had taken a photograph.[6] Certainly, the overwhelming weight of the evidence suggests otherwise.
Respondent’s testimony that he did not see Mr. Hailey in the Courtroom and did not know a photograph had been taken is also against the overwhelming weight of the evidence. Although Mr. Hailey entered the Courtroom from the rear, he stood to the left of the Respondent and carried on a conversation with Agent Crawford. Mr. Hailey approached the Respondent from the left, walked up on the platform, stepped behind the bench and took several photographs -with his digital camera using the flash attachment. The Respondent stated to Mr. Hailey, “Don’t make me look bad.” Certainly he was aware not only that Mr. Hailey was in the Courtroom but also that he had taken the photographs in question.
¶ 12. Ultimately, the Commission’s findings of fact were identical to that of the Committee. Likewise, the Commission’s conclusions of law were identical to that of the Committee. The Commission and the Committee differ only as to the appropriate sanction. Again, the Commission recommends to this Court a public reprimand while the Committee had recommended to the Commission a private reprimand.
¶ 13. The Commission found that Judge Blakeney engaged in judicial misconduct by allowing photographs to be taken during a court proceeding in violation of Can *528 ons 1, 2A, 2B, 3A(2) and 3B(12).[7] The Mississippi Rules for Electronic And Photographic Coverage of Judicial Proceedings (MREPC) were not in effect at the time; however, the rules were adopted approximately two and one-half months later.[8] The Commission argues that Judge Blakeney’s actions constituted “wilful misconduct in office or conduct which is prejudicial to the administration of justice which brings the judicial office into disrepute.”
¶ 14. We agree with the 'findings of the Commission which, inter alia, include a finding that Judge Blakeney’s assertion that he was unaware of the picture-being taken in his courtroom is belied by the record, including the 'testimony of Forrest Hailey and the inconsistent testimony of Agent Randy Crawford. We 'thus conclude that the Commission’s findings are based on clear and convincing evidence. We find, however, a violation only of then-existing Canon 3(B)(12) of the Code of Judicial Conduct, which prohibited photographs being taken during court proceedings.
*529 ¶ 15. Having found that Judge Blakeney’s actions were violative of our Code of Judicial Conduct, we now turn the appropriate sanction to impose upon the judge.
¶ 16. The Commission argues that today’s case is analogous to Carr, wherein this Court imposed a public reprimand upon Judge Carr after finding that the judge, in allowing arraignment and initial appearance proceedings to be photographed and videotaped by representatives of the media, committed willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. Carr, 786 So.2d at 1059. However, in Carr, in lieu of an evidentiary hearing, Carr and the Commission entered into an Agreed Statement of Facts and Proposed Recommendation. In the case sub judice, Judge Blakeney received an evidentiary hearing, but subsequent to the evidentiary hearing, and after the Commission had filed its recommendation and related documents with this Court, the judge filed a Notice of Non-Contention wherein he simply stated that “he no longer wishes to contest” the Commission’s recommendation. The judge’s action here is similar to a defendant’s entry of a nolo contendere (no contest) plea to a criminal charge. In so doing, the defendant is not admitting guilt — he is simply not contesting the charges. In today’s case, the judge does not agree with the findings and the recommendation of this Commission — he has simply chosen to no longer contest the recommendation. Thus, today’s case is factually dissimilar to Carr, wherein the judge and the Commission agreed as to a statement of the facts and as to the recommended sanction, in lieu of an evidentiary hearing. Additionally the case sub judice involves one isolated incident with one newspaper photographer, whereas Carr involved a judge who on two separate occasions over the period of one year allowed representatives of both the print and broadcast news media to photograph and electronically record the proceedings and later disseminate those proceedings to the general public.
¶ 17. Through the years, we have developed factors to consider in determining the appropriate sanctions in judicial proceedings. Recently we modified and clarified the appropriate application of these factors. In Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004), by reference to our prior decisions in Bishop and In re Baker, 535 So.2d 47, 54 (Miss.1988), we stated:
Today, in line with the spirit of Bishop, we modify Baker to apply generally to the determination of all sanctions in judicial misconduct proceedings (rather than merely applying to the question of public reprimand) and examine the appropriateness of such sanctions based on the following factors: (1) The length and character of the judge’s public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and, (6) The presence or absence of mitigating or aggravating circumstances.
883 So.2d at 1158(¶ 9) (footnote omitted).
¶ 18. We thus apply the Gibson factors to the facts as revealed in the record before us.
(1) The length and character of the judge’s public service.
¶ 19. The judge began serving his second elected term on January 5, 2004, and as already noted, he has previously received a public reprimand. Miss. Comm’n on Judicial Performance v. Blakeney, 848 So.2d 824 (Miss.2003).
*530 (2) Whether there is any prior case law on point.
¶ 20. The Commission states that Carr is directly on point with today’s case. In Carr, this Court publicly reprimanded a justice court judge for permitting news media to take photographs and videotape during proceedings. Carr, 786 So.2d 1055. However, we have already determined that Carr is factually dissimilar to today’s case.
(3) The magnitude of the offense and the harm suffered,[9]
¶ 21. The Commission notes that: “The Respondent’s willful disregard for Canon 3(B)(12) of the code of Judicial Conduct canon [sic] is significant.” By comparison with other offenses committed by judges which have resulted in sanctions, we are hard pressed to find the judge’s offense to be of any significant magnitude. There is nothing to indicate any harm suffered because of the publication of this one photograph in the local newspaper. Additionally, two months after the judge’s action in the case sub judice, this Court adopted the Mississippi Rules For Electronic And Photographic Coverage of Judicial Proceedings, permitting cameras in the courtroom under certain specified conditions.
(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 22. As we have already indicated, unlike the facts in Carr, in our case-today, the judge’s actions resulted in the publication of one photograph in one newspaper. The record is devoid of a pattern of misconduct by the judge.
(5) Whether moral turpitude was involved. '
¶ 23. Moral turpitude “includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Gibson, 883 So.2d at 1158 n. 2. Clearly, today’s case does not involve moral turpitude.
■ (6) The presence or absence of mitigating or aggravating circumstances.
¶ 24. Other than the judge’s prior public reprimand, which we in no way overlook, aggravating circumstances are nonexistent. Our analysis of the other factors and the record to which we have made reference, reveal several mitigating factors which cause us to conclude that a private reprimand is appropriate in this case.
CONCLUSION
¶ 25. Having duly considered the above facts and authorities, we conclude that the judge’s conduct was actionable under Art. 6, § 177A(e) of our Constitution, and viola-tive of Canon 3(B)(12) of our then-existing Code of Judicial Conduct by allowing a photograph to be taken of court proceedings. Although the Commission has recommended that Judge Blakeney receive a public reprimand, for the reasons stated, we disagree and find that the appropriate sanction for this misconduct is a private reprimand and taxing the judge with the costs of this appeal.
' ¶ 26. SIMPSON COUNTY JUSTICE COURT JUDGE TED L. BLAKENEY SHALL BE PRIVATELY REPRIMANDED AND ASSESSED COSTS IN THE AMOUNT OF $ 495.00.
*531 SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.

. Because Judge Blakeney’s prior public reprimand is discussed in today’s opinion, and because Judge Blakeney has filed a Notice of Non-Contention on the basis that the Commission’s recommendation of a public reprimand has already been publicized by the local *523 media in Simpson County, we see no reason not to reveal names and locations in this opinion.

. Due to ongoing renovations to the justice court building, the judge could access his office only during normal business hours.

. The incident in question occurred on February 5, 2003, which was prior to the the adop *524 tion of the Mississippi Rules for Electronic and Photographic Coverage of Judicial Proceedings (MREPC), effective April 17, 2003.

. Both the Committee and the Commission eventually held that based on extenuating circumstances as revealed in the record, such failure to wear a robe at the proceedings in question was unintentional and thus not viola-tive of the Code of Judicial Conduct. We agree, and we will thus focus only on the issue of the judges’s allowing photographic coverage of his court proceedings.

. Admittedly, Hailey equivocated on this issue. At one point in his deposition testimony Hailey stated "I remember a statement being made, ‘Don’t make me look bad.' And I think the judge said that; don't make me look bad.” A few seconds later, Hailey testified, "I remember someone saying, 'Don’t make me look bad.’ ” During examination by the judge's attorney, the following colloquy occurred: "Q[uestionj. Do you remember Judge Blakeney telling you not to take that picture or not to publish that picture? A[nswer]. I remember the statement being made, Don’t make me look bad. But as far as a statement do not [take] that picture or asked me not to take a picture, I don’t recall that, no, sir. Q[uestion], What does the statement don’t make me look bad mean to you? A[nswer]. Could mean several things, you know. I have really no definite idea of what it meant.”

. Both the Committee and the Commission are in error as to which party conducted the direct examination and cross examination of Agent Crawford. The Commission's only witness at the hearing before the Committee was Forrest Hailey by way of deposition testimony. After the deposition was entered into evidence in the Commission's case-in-chief, the Commission rested and then the judge called Agent Crawford in his case-in-chief. Thus, the judge, through counsel, conducted the direct examination of Crawford while the Commission’s counsel conducted the cross examination of Crawford. Therefore, it was on direct examination by the judge’s counsel when Crawford testified that Hailey took the photograph and then left the Courtroom. It was on cross-examination by the Commission's counsel when Crawford testified that he did not notice a flash, did not hear the clicking of a camera, and did not know that Hailey had taken a photograph.

. At the time of the alleged actions, the following pertinent provisions of the Code of Judicial Conduct were in effect:
CANON 1 A Judge Should Uphold the Integrity and Independence of the Judiciaiy
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
CANON 2 A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. Judges shall not allow their family, social, or other relationships ' to influence the judges’ judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. Judges shall not testify voluntarily as character witnesses.
CANON 3 A Judge Should Perform the Duties of His Office Impartially and Diligently
A. Judicial Duties in General. The judicial duties of judges take precedence over all their other activities. The judges' judicial duties include all the duties of their office prescribed by law. In the performance of these duties, the following standards apply:
[there is no subsection 2]
B. Adjudicative Responsibilities.
(12) Except as may be authorized by rule or order of the Supreme Court, a judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:
(a) The use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;
(b) The broadcasting, television, recording, or photographing of investitive, ceremonial, or naturalization proceedings;
(c) The photographic'or electronic recording and reproduction of appropriate court proceedings under the following conditions:
(I) the means of recording will not distract participants or impair the dignity of the proceedings;
(ii) the parties have consented, and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproduction;
(iii) the reproduction will not be exhibited until after the proceeding has been concluded and all direct appeals have been exhausted; and
(iv) the reproduction will be exhibited only for instructional purposes in educational institutions.

. The Mississippi Rules For Electronic And Photographic Coverage of Judicial Proceedings took effect on April 17, 2003.

. The Commission understandably addressed only the magnitude of the offense (and not the harm suffered), since this factor was modified in Bishop, after the briefs were filed in the case sub judice.