918 So.2d 1247 (2005)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Billy Ray BROWN.
No. 2004-JP-01831-SCT.
Supreme Court of Mississippi.
June 30, 2005.
*1250 Luther T. Brantley, III, attorney for appellant.
Christopher A. Tabb, Brandon, attorney for appellee.
EN BANC.
DICKINSON, Justice, for the Court.
¶ 1. Billy Ray Brown has served as a Rankin County Justice Court Judge for over twenty-five years. On March 10, 2003, a criminal affidavit was filed with the Justice Court of Rankin County, alleging that Judge Brown's son, Michael, pushed his wife, Alison, down to the floor and kicked her with his boots. At the scene, Deputy Sheriff Justin Evans found broken glass and Alison with blood on her shirt and a swollen face. When Deputy Evans attempted to question Michael, he refused to cooperate and proceeded toward his bedroom where, according to Alison, he kept a gun. Deputy Evans drew his pistol and arrested Michael.
¶ 2. Thereafter, Judge Brown interfered with the prosecution of the case against Michael by ordering him released from jail and arranging to have his case remanded to the file. This prompted Alison to file a complaint with the Mississippi Commission on Judicial Performance. Upon learning of the complaint, Judge Brown threatened Alison by telling her that if he lost his job, she would lose hers.
¶ 3. The Commission concluded its investigation of Alison's complaint by recommending that this Court remove Judge Brown from office and assess costs of $1,336.79. Judge Brown does not challenge the factual basis for the charges against him. He does, however, challenge the severity of the punishment recommended by the Commission. We agree with the Commission and find that Judge Brown should be removed from office and assessed costs of $1,336.79.

FACTS

Deputy Sheriff Justin Evans
¶ 4. On March 10, 2003, Deputy Sheriff Justin Evans arrested Michael Brown on charges of assault and domestic violence against Michael's wife, Alison. Shortly after the arrest, Michael's father, Judge Brown, called Justin Holifield, the adult detention officer, and told him to release Michael. Holifield testified that he complied because "I have to do what a judge tells us."
¶ 5. Deputy Evans was later informed that Judge Brown wished to speak with *1251 him. When he arrived at Judge Brown's office at the Justice Court, he found both Judge Brown and Michael present. Michael apologized for his actions and admitted to Deputy Evans that he was "out of line." According to Deputy Evans's testimony:
Judge Brown asked me if there was any way we could resolve this. I told him that basically, you know, "What do you mean? I mean, I got three charges on him." [I] [s]aid, "You mean some kind of counseling, something like that?" And he said, "well, you know," [he] said, "I need you to drop these charges." I said, "I'm not going to drop the charges." And he told me that he had spoken with the sheriff and that it would be in my best interest to drop the charges. That he had just gotten off the phone with the sheriff.
¶ 6. Although Deputy Evans refused to drop the charges, he agreed to "remand" the charges to the file which essentially meant they would not be pursued. He further testified that, had Judge Brown not intervened, he would not have remanded the charges against Michael but would have "seen them through." Later, Deputy Evans was informed that the charges had been dismissed.

Assistant County Prosecutor Richard Wilson
¶ 7. Judge Brown also confronted attorney Richard Wilson, who represented the Sheriff's office and also served as the Assistant County Prosecutor. While Wilson was showing his new intern, Richard Lawrence, around the courthouse, they entered Judge Brown's courtroom. When Wilson approached the bench to introduce Lawrence, Judge Brown slid a case file across the bench and said, "I want this dismissed." When Wilson realized the case was against Judge Brown's son, he refused to have the charges dismissed. Judge Brown insisted two more times that Wilson dismiss the charges, and Wilson refused both demands and left the court-room.

Rankin County Justice Court Clerk Kristie Pyles
¶ 8. When Michael was again charged with domestic violence against his wife on June 26, 2003, Judge Brown approached Kristie Pyles, the Rankin County Justice Court Clerk, and instructed her to hold the file on her desk rather than follow the normal procedure and place it on Judge Redfern's desk. On cross-examination before the Commission, Pyles agreed with Judge Brown's attorney that Judge Brown's probable purpose in making the request was that "it would be more private." However, Judge Brown later testified that he intended to ask Judge Redfern for some "help" with the charges.

Alison Brown
¶ 9. Alison Brown became upset that she "couldn't get any results from the justice court." She learned that no warrant was issued after the second incidence of violence against her and that the case against Michael was "remanded." In July 2003, she filed a complaint against Judge Brown with the Commission. Sometime during the following October, Judge Brown contacted Alison and insisted she drop the charges she filed against him. Alison refused, telling Judge Brown she believed he "abused his power as a judge to help his son." When asked how Judge Brown responded to her refusal to drop the charges, Alison testified, "He told me that if I came after his job that he was coming after mine."
¶ 10. As a result of Alison's complaint, the Commission filed a formal Complaint against Judge Brown, charging him with judicial misconduct constituting willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, in violation *1252 of Section 177A of the Mississippi Constitution.
¶ 11. Finding Judge Brown violated Canons 1, 2 A, 2 B, 3 B(1), 3 B(2), 3 B(3), 3 B(7), 3 B(8), 3 C(1), 3 C(2), 4 A, and 4 D(1) of the Code of Judicial Conduct, the Commission recommended that he "be removed from the office of Justice Court Judge, District Three, Rankin County, Mississippi and assessed costs of [the] proceeding in the sum of $1,336.79." Judge Brown appeals.

STANDARD OF REVIEW
¶ 12. This Court reviews judicial misconduct proceedings de novo. Miss. Comm'n on Judicial Performance v. Perdue, 853 So.2d 85, 88 (Miss.2003) (citing Miss. Comm'n on Judicial Performance v. Vess, 692 So.2d 80, 83 (Miss.1997)). Great deference is given to the Commission's findings when those findings are based on clear and convincing evidence. Id. (citing Miss. Comm'n on Judicial Performance v. Lewis, 801 So.2d 704, 707 (Miss.2001); Miss. Comm'n on Judicial Performance v. Bishop, 761 So.2d 195, 198 (Miss.2000)). However, this Court is not bound by the Commission's findings and must use independent judgment in assessing the misconduct. Id. (citing In re Collins, 524 So.2d 553, 556 (Miss.1987)). It is within the exclusive province of this Court to impose sanctions for judicial misconduct. Id. (citing Miss. Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1078 (Miss.1996); In re Garner, 466 So.2d 884, 885 (Miss.1985)).

ANALYSIS
¶ 13. In his appeal, Judge Brown does not challenge the finding by the Commission of misconduct. He challenges only the recommendation of punishment. His counsel states:
Judge Brown has been on the bench for 25 years. He is not running for reelection. He has heard tens of thousand [sic] of cases. The actions of the Judge, while not appropriate, he admits to. Judge Brown attempted to help his son in what became a divorce. His actions had no impact on the outcome of the criminal charges filed against Michael Brown. Judge Brown did not hear any of the charges against his son. There are a very limited number of persons involved, none of which were impacted and no "moral turpitude" was involved.
¶ 14. Before analyzing the punishment recommended by the Commission, we first shall examine the Canons which were violated.

CANON 1A Judge Shall Uphold the Integrity and Independence of the Judiciary
¶ 15. Canon 1 of the Code of Judicial Conduct provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
¶ 16. This Court has recently stated that Canon 1 "emphasizes failures which rise to the level of impugning the independence of the judiciary." Miss. Comm'n on Judicial Performance v. Former Judge U.U., 875 So.2d 1083, 1088 (Miss.2004). The Commission argues that by using his office in an attempt to have serious criminal charges dismissed against his son, Judge Brown's actions impugn the dignity and integrity of his office and the judiciary.
¶ 17. Judge Brown's conduct indeed violated Canon 1. His misuse of the power of *1253 his office evidenced his disregard for the administration of justice. By attempting to use his position to obtain favorable treatment for, and obstruct the prosecution of the charges against, his son, Judge Brown discredited the dignity and integrity of his office and the judiciary.

CANON 2A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All His Activities
¶ 18. Canon 2 of the Code of Judicial Conduct states, in pertinent part:
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. Judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. Judges shall not testify voluntarily as character witnesses.
¶ 19. The Commission says Judge Brown violated Canon 2 because his conduct not only created the appearance of an impropriety but also constituted an actual impropriety. The Commission further says that, because Judge Brown's actions compromised the integrity and impartiality of the judicial system and eroded public confidence in the judiciary, he violated Canon 2 A. The Commission further argues that by threatening the complainant, his son's ex-wife, Judge Brown attempted to "muzzle" the authority of the Commission which, in turn, has served to diminish public confidence that the judiciary is honest and impartial.
¶ 20. We agree. By using his office to improperly influence other officers of the judicial system, Judge Brown both created the appearance of impropriety and committed an actual impropriety. Judge Brown's actions almost certainly would tend to erode public confidence in the impartiality of the judiciary and his conduct violated Canon 2 A.
¶ 21. The Commission further argues that by allowing his duties as a father and his duties as a judge to overlap, Judge Brown's conduct violated Canon 2 B. The Commission also asserts that, by attempting to have his son's criminal charges dismissed and by having the file held by the clerk for privacy purposes, Judge Brown violated Canon 2 B.
¶ 22. We agree. Judge Brown allowed his relationship with his son to influence his conduct and judgment, and he lent the prestige of his office to advance his and his son's private interests. Judge Brown violated Canon 2 B.

CANON 3A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently
¶ 23. Canon 3 B addresses adjudicative responsibilities. The Commission found that Judge Brown violated Canon 3 B(1), 3 B(2), 3 B(3), 3 B(7), and 3 B(8).
¶ 24. Canon 3 B(1) states: "A judge shall hear and decide all assigned matters within the judge's jurisdiction except those in which disqualification is required." (emphasis added). This canon applies only to matters which have been assigned to a judge. The Commission says that Judge Brown violated Canon 3 B(1) because he should have taken a "hands-off" approach to his son's criminal case, rather than interfering and disrupting the normal course of procedure as he did. We do not agree with the Commission that Judge Brown violated Canon 3 B(1). There is no evidence in the record that suggests Judge Brown was assigned any matter relating to the charges against *1254 his son. While Judge Brown's interference with the charges against his son violated his ethical duties under other canons, Canon 3 B(1) addresses matters "assigned" to a judge. Code of Jud. Conduct Canon 3; see Miss. Comm'n on Judicial Performance v. Justice Court Judge S.S., 834 So.2d 31, 34 (Miss.2003) (violation of Canon 3 B(1) found where judge who participated in drafting a petition against a law officer while serving as a judicial officer and continuing to preside on cases involving the Deputy without disqualifying himself).
¶ 25. Since the disciplinary proceedings against Judge Brown do not allege that he presided over a matter from which he should have disqualified himself, he did not violate Canon 3 B(1).
¶ 26. Canon 3 B(2) states: "A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism."
¶ 27. The Commission says Judge Brown's conduct was not faithful to the law because he promoted personal gain at the expense of law enforcement and court personnel. We agree. In attempting to obstruct the justice system by interfering with the charges against his son, Judge Brown was unfaithful to the law, and he failed to maintain professional competence. Judge Brown's conduct violated Canon 3 B(2).
¶ 28. Canon 3 B(3) states: "A judge shall require order and decorum in proceedings before the judge."
¶ 29. The Commission found that the conversation with Richard Wilson, in which Judge Brown repeatedly demanded that Wilson dismiss the charges against his son, occurred while Judge Brown was on the bench and proceedings were being held in his courtroom. The Commission argues that Judge Brown's "angry persistence" that Wilson comply with his demands disrupted the order and decorum of the proceedings in progress at that time.
¶ 30. We disagree. Judge Brown's conduct during his conversation with Richard Wilson did not violate Canon 3 B(3). While Judge Brown's attempts to coerce Wilson into dismissing the charges against Michael Brown were inappropriate in any setting and violated other canons of the Code, the record does not demonstrate that this discussion disrupted the order of the proceedings before Judge Brown at the time. The discussion took place at the bench after Wilson asked permission to approach. There was no testimony at the hearing before the Commission that the exchange between Wilson and Judge Brown affected the order or decorum of Judge Brown's courtroom. The Commission has not shown by clear and convincing evidence that Judge Brown's conduct violated Canon 3 B(3).
¶ 31. Canon 3 B(7) states:
A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding.
¶ 32. The Commission says Judge Brown engaged in ex parte communications when he (i) instructed the jailer, Justin Holifield, to release his son on his own recognizance in violation of another Judge's bond order; (ii) talked with the arresting officer in an attempt to have the charges dismissed; (iii) repeatedly demanded that the prosecutor dismiss charges against his son; and (iv) requested that the clerk hold his son's file rather than deliver it to the office of the appropriate justice court judge.
*1255 ¶ 33. We disagree. While Judge Brown's communications with the jailer, the arresting office, the prosecutor, and the clerk were inappropriate and contrary to the fair administration of justice, they are not ex parte communications prohibited under Canon 3 B(7). The language of Canon 3 B(7) and its commentary address communications between a judge and parties to a case over which the judge is presiding. This Court has consistently applied this canon (and its predecessor, Canon 3 A(4)) to cases in which the alleged ex parte communication was between a judge and a party to a case before the judge. See Miss. Comm'n on Judicial Performance v. Perdue, 853 So.2d 85 (Miss.2003); Miss. Comm'n on Judicial Performance v. Peyton, 812 So.2d 204 (Miss.2002); Miss. Comm'n on Judicial Performance v. Lewis, 801 So.2d 704 (Miss.2001); Miss. Comm'n on Judicial Performance v. Warren, 791 So.2d 194 (Miss.2001).
¶ 34. While Judge Brown's discussions with the jailer, the arresting officer, the prosecutor, and the clerk violated other provisions of the Code of Judicial Conduct, they did not violate Canon 3 B(7).
¶ 35. Canon 3 B(8) states: "A judge shall dispose of all judicial matters promptly, efficiently and fairly."
¶ 36. The Commission says that although neither of Michael Brown's cases were assigned to Judge Brown, Judge Brown's interference with them hindered the fair and impartial process of the court's business and hindered the promptness, efficiency, and fairness Canon 3 B(8) seeks to promote.
¶ 37. We disagree. While Judge Brown's actions did interfere with the fair, prompt, and efficient conclusion of the matters involving his son, they did not violate Canon 3 B(8), which addresses judicial matters presided over by the judge accused of violating the canon. Judge Brown was not assigned to, and he did not preside over, the cases with which he attempted to interfere. Canon 3 B(8) does not apply to the facts of this matter; and accordingly, we find no violation of Canon 3 B(8).
¶ 38. Canon 3 C addresses administrative responsibilities. The Commission says Judge Brown's conduct violated Canon 3 C(1) and 3 C(2). Canon 3 C(1) states:
A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business.
¶ 39. Canon 3 C(2) states:
A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the perforamance of their official duties.
¶ 40. The Commission argues that Judge Brown violated Canon 3 C(1) and 3 C(2) by improperly interfering with the normal processing and prosecution of his son's cases. We agree. By telling the court clerk to abandon normal procedure and hold the file on her desk rather than place it on Judge Redfern's desk, Judge Brown misused his administrative powers to interfere with the clerk's official duties. By his repeated attempts to intimidate an officer of the law, the prosecutor, and the court clerk, Judge Brown not only violated his own code of conduct, but encouraged if not demandedthat others violate their own respective codes of conduct. Judge Brown's conduct violated Canon 3 C(1) and 3 C(2).

CANON 4A Judge Shall So Conduct the Judge's Extra-Judicial Activities as to Minimize the Risk of Conflict with Judicial Obligations
*1256 ¶ 41. The Commission found that Judge Brown's conduct violated Canon 4 A and 4 D(1) of the Code of Judicial Conduct. However, the Commission submits to this Court that Canon 4 is inapplicable in this case. We agree; and therefore, Canon 4 will not be addressed.
Section 177A of the Mississippi Constitution of 1890Willful Misconduct and Conduct Prejudicial to the Administration of Justice
¶ 42. This Court recently addressed willful misconduct in office and conduct prejudicial to the administration of justice in Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004). We held:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally, or with gross unconcern for his conduct and generally in bad faith ... A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith ... Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Id. at 1157 (quoting In re Quick, 553 So.2d 522, 524-25 (Miss.1989)).
¶ 43. Judge Brown's conduct constituted both willful misconduct in office and conduct prejudicial to the administration of justice. Judge Brown wrongfully used the power of his office to accomplish a purpose which he knew or should have known was beyond the legitimate exercise of his authority. His actions were intentional, and he admits they were wrong. Using the power of his office to interfere with the fair administration of justice to gain advantage for his son brings his office and the judiciary into disrepute.

Appropriate Discipline.
¶ 44. The Commission recommends that Judge Brown be removed from office pursuant to Section 177A of the Mississippi Constitution of 1890, as amended, and assessed the costs of this proceeding in the amount of $1,336.79. Judge Brown argues that the Commission did not take into consideration the length and character of his public service, his commitment to fairness and his innovative procedural form, the magnitude of the offense, the number of persons affected and that "moral turpitude" was not involved.
¶ 45. This Court has recently held that the seven mitigating factors set forth in In re Baker, 535 So.2d 47 (Miss. 1988), will be applied "generally to the determination of all sanctions in judicial misconduct proceedings." Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004). In Gibson, the seven mitigating factors were reduced to these six: (1) The length and character of the judge's public service; (2) whether there is any prior case law on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances. Id.

(1) The length and character of the judge's public service
¶ 46. Judge Brown submits that he has been on the bench for twenty-five years and claims he will not seek another term. While recognizing his lengthy service, the Commission points to prior disciplinary actions imposed on Judge Brown which are of similar character and must be considered by this Court.

*1257 (2) Whether there is any prior case law on point

¶ 47. Both parties cite a number of cases in which similar conduct is addressed. The Commission cites Mississippi Commission on Judicial Performance v. Brown, 761 So.2d 182 (Miss.2000), which condemns the use of a judicial office to benefit a son, Mississippi Commission on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001), and several other cases condemning ex parte communications. The Commission submits that there is no direct case law on point regarding a judge threatening a complainant. However, in Mississippi Commission on Judicial Performance v. Dodds, 680 So.2d 180 (Miss.1996), we held a judge's conduct constituted obstruction of the judicial process where, after a complaint was filed against the judge, the judge entered an order which was found to be an attempt to intimidate potential witnesses.
¶ 48. Judge Brown cites Mississippi Commission on Judicial Performance v. Walker. 565 So.2d 1117 (Miss.1990), in which this Court held that "[t]he sanction imposed should be consistent with other like cases and ought to fit the offense." Id. at 1124 (citing In re Bailey, 541 So.2d 1036, 1039 (Miss.1989)). Additionally, Judge Brown cites a menagerie of cases which imposed lesser sanctions than those suggested by the Commission in this case. However, while the judges' conduct in the cases cited by Judge Brown may be similar to his conduct in this case, none of the misconduct in the other cases rises to the level of severity as Judge Brown's in this case.

(3) The magnitude of the offense and the harm suffered
¶ 49. The Commission argues that the magnitude of Judge Brown's misconduct is significant. The Commission submits a list of persons involved in this case and discusses the harm each suffered as a result of Judge Brown's actions. These persons are as follows: the jailer, who felt compelled to follow Judge Brown's order; Officer Evans, who was intimidated by Judge Brown when he would not agree to dismiss the charges, and who may worry about similar problems, should he be required to arrest a judicial official's family member in the future; Richard Wilson, who may suffer a strained relationship with Judge Brown because he refused to dismiss the charges; the court clerk, who was placed in an awkward and embarrassing position; Alison Brown, who as a victim was denied justice and who suffered harm when Judge Brown threatened her job and demanded that she forego her right to file a complaint against him with the Commission; and his son, Michael, who suffered harm because his father attempted to have his charges "swept under the rug" thereby incorrectly implying to him that he was above the law. The Commission says each of these individuals were directly affected and harmed by Judge Brown's conduct.
¶ 50. Judge Brown admits that his actions were inappropriate. However, he argues that his conduct had no impact on the outcome of the criminal charges against his son, and a very limited number of persons were involved and none were really impacted.
¶ 51. We find Judge Brown's offenses were of significant magnitude. By attempting to intimidate officers of the law and the court into interfering with the administration of justice, Judge Brown has offended the essence of the principles on which our judiciary and its code of conduct are based and depend. Each of the above named individuals, as well as the judiciary itself, was harmed by Judge Brown's actions.

*1258 (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct

¶ 52. The Commission submits that Judge Brown previously received a private reprimand for similar conduct. In another case before another Rankin County Justice Court Judge, Judge Brown approached the affiant in a criminal case in which the defendant was a relative of a person who had filed a complaint against Judge Brown with the Commission. Judge Brown approached the affiant in the case and encouraged the affiant to proceed with the charges against the defendant. Additionally, the Commission points out that the case sub judice involves multiple instances of misconduct. Judge Brown makes no response.
¶ 53. Since this proceeding involves multiple offenses and Judge Brown has previously been disciplined for improperly interfering with a case before the Justice Court, we find that Judge Brown has evinced a pattern of improper and unethical behavior.

(5) Whether moral turpitude was involved
¶ 54. The Commission cites Gibson, 883 So.2d 1155, in which this Court held that moral turpitude includes, but is not limited to "actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Id. at 1158 n. 2. The Commission argues that by threatening and intimidating the various individuals involved, Judge Brown interfered with the administration of justice and committed acts that bring the judiciary into disrepute.
¶ 55. Judge Brown argues that his actions did not involve moral turpitude. He does not substantiate his argument with any facts or legal authority.
¶ 56. We find that Judge Brown's conduct involved moral turpitude. His actions interfered with the administration of justice. Worse, he used the power of his office to pressure others into interfering with the administration favoring his son, interfering with the judicial process, and violating their own professional ethics. Certainly, Judge Brown's actions bring the judiciary into disrepute.

(6) The presence or absence of mitigating or aggravating circumstances
¶ 57. Judge Brown does not specifically address this issue in his brief, but submits that he has served twenty-five years on the bench, and does not intend to seek another term. The Commission argues that Judge Brown's twenty-five years on the bench failed to teach him that his actions were unacceptable. The Commission also says that his number of years on the bench is evidence that he knew his actions were improper.
¶ 58. We find that Judge Brown's service, while lengthy, does not significantly mitigate the evidence against him under the other Gibson factors. Judge Brown has been reprimanded for similar conduct in the past and should have known his actions were improper.
¶ 59. Our review of the Gibson factors as applied to this case supports the Commission's recommendation that we remove Judge Brown from office. Judge Brown's actions were offensive to the integrity of the judiciary and caused significant harm to those persons involved.
¶ 60. Alison Brown, the alleged the victim of a violent crime, sought help from the appropriate authorities. Rather than receiving the protection of the legal system, her rights were trampled by an unprincipled judge who sought only to protect his son at the expense of his oath of *1259 office and his obligation to the administration of justice.

CONCLUSION
¶ 61. Judge Brown's actions were improper, exhibited disrespect for all parties involved and the judicial system itself, and threatened the integrity and independence of his judicial office. Therefore, this Court removes him from the office of Justice Court Judge and assesses him with the costs of this proceeding in the amount of $1,336.79.
¶ 62. The Clerk of this Court is directed to mail copies of this opinion to the Rankin County Board of Supervisors and to the Clerks of the Rankin County Chancery, Circuit, and Justice Courts.
¶ 63. BILLY RAY BROWN IS REMOVED FROM OFFICE AS RANKIN COUNTY JUSTICE COURT JUDGE, DISTRICT 3, EFFECTIVE FROM AND AFTER THE DATE OF THIS OPINION AND SHALL PAY THE COSTS OF THIS PROCEEDING IN THE AMOUNT OF $1,336.79.
WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. SMITH, C.J., AND DIAZ, J., NOT PARTICIPATING.
EASLEY, Justice, Concurring in part and Dissenting in part:
¶ 64. While I concur with the majority's finding that Judge Billy Ray Brown's conduct violated Canon 3 C(1) and 3 C(2), I must respectfully dissent from the majority's finding that Judge Brown's conduct warrants removal. Precedent dictates a lesser sanction than the punishment imposed by the majority.
¶ 65. In Mississippi Commission on Judicial Performance v. Sanders, 708 So.2d 866 (Miss.1998), Judge Sanders suspended another court's sentence of a former client after the sentence had been imposed and placed a second inmate on probation after his conviction and sentence had been affirmed by a superior court. Judge Sanders had served as Circuit Court Judge for of less than five years, and there were no witnesses and no evidence as to this judge's character and public service. Judge Sanders's conduct received a public reprimand. Id. at 877.
¶ 66. In the case at bar, Judge Brown has served on the bench for over twenty-five years. This mitigating factor should be given greater weight than the majority provides.
¶ 67. Further, in Mississippi Commission on Judicial Performance v. Brown, 761 So.2d 182 (Miss.2000), Winston County Justice Court Judge A.L. Brown committed judicial misconduct in his son's driving under the influence (DUI) case by making ex parte contacts and attempting to gain a dismissal from the judge handling his son's case by contacting the arresting officer and the officer's supervisor. In Brown, the Court found the appropriate sanctions to be a public reprimand and a fine.
¶ 68. In the case at bar, Judge Billy Ray Brown committed similar actions to influence his son's criminal case. A public reprimand and fine are the appropriate sanctions under the circumstances.
¶ 69. For these reasons, I must concur in part and dissent in part.