502 So.2d 1083 (1987)
In re Judge W. Glenn SOILEAU.
No. 86-0-2111.
Supreme Court of Louisiana.
February 23, 1987.
Eugene J. Murrett, Chief Executive Officer, Ralph Capitelli, for applicant.
W. Glenn Soileau, Judge, Bob F. Wright, Domengeaux & Wright, J. Burton Willis, for respondent.
LEMMON, Justice.
This is a disciplinary proceeding against a Louisiana judge. The proceeding was conducted before the Judiciary Commission, a constitutional commission which is composed of three judges, three attorneys and three citizens who are not attorneys or public officials. The Commission is authorized to recommend a judge's censure, suspension or removal from office for, among other things, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. La.Const. art. V, § 25(C); see also Professional Discipline for Lawyers and Judges, Standards Relating to Judicial Discipline and Disability Retirement, § 3.3 (1979).
Pursuant to Rule XXIII, § 3 of the Rules of the Supreme Court of Louisiana, the Commission, upon receiving complaints about respondent's conduct, made a preliminary investigation to determine whether a hearing should be held on the question of disciplining respondent. After notifying respondent of the investigation and the nature of the charges, the Commission conducted an investigatory hearing on July 12, 1986, at which respondent appeared in proper person and presented evidence.
The Commission decided to institute a formal hearing concerning the following charges:
"CHARGE I
"A. That on or about May 3, 1986 at the 1986 Crawfish Festival in Breaux Bridge, Louisiana, you were involved in a series of incidents which involved:
"(1) committing a battery upon a law enforcement official;
"(2) disturbing the peace by directing verbal abuse and the use of obscenities towards numerous individuals at the Crawfish Festival Headquarters and grounds, including stating that you `owned the goddamn town'; and
"(3) all of the above incidents took place in the presence of your constituents, which is clearly prejudicial to the administration of justice and brought the judicial office into disrepute.
"That subsequent to these incidents, on May 23, 1986, you entered a plea of *1084 nolo contendre (sic) to La.R.S. 14:35 (simple battery) and La.R.S. 14:103(A) (2) (disturbing the peace). You were sentenced to pay a fine of $200 plus costs, serve five days in jail; however, the jail term was suspended and you were ordered to perform five eight hour days of community service for the charge of simple battery. You were also sentenced to pay a fine of $100 plus costs for the charge of disturbing the peace. A copy of this proceeding is attached hereto and incorporated as Exhibit `A'.
"Furthermore, while under oath at the preliminary hearing of this matter, held before the Judiciary Commission on July 12, 1986, you clearly and unequivocably admitted your guilt in the above-mentioned incidents. Preliminary Hearing of the Louisiana Judiciary Commission, No. 86-210, p. 25, lines 1-6; p. 26, lines 27-29; p. 27, lines 1-4 (07/12/86). A copy of the Commission Hearing transcript is attached hereto and incorporated as Exhibit `B'.
"B. By reason of the foregoing Paragraph A, you have:
"(1) violated Canon 1 and 2(A) of the Code of Judicial Conduct, adopted by the Supreme Court of Louisiana, effective January 1, 1976; and
"(2) you have engaged in willful misconduct relating to your official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
"CHARGE II
"A. That on or about January 26, 1979, you were engaged in a game of pool at a bar in Breaux Bridge, Louisiana with Mr. Daly, on which game there was a $100 wager. That as a result of the game, an altercation occurred between you and Mr. Daly that necessitated the response of a Breaux Bridge town policeman. You then informed the police officer that he had no authority to intervene because you `ran the town.' Subsequent to the incident, Mr. Daly preferred a charge of simple battery against you before a St. Martinville Justice of the Peace which resulted in your arrest. After being released on a $250 personal recognizance bond, you then preferred a charge of simple battery against Mr. Daly in your own court and you, as judge of that Court, fixed bond for Daly at $1,000.
"That subsequent to the incident, you were brought before this Commission and were warned not to engage in similar activities as occurred at the pool hall in 1979. You were also notified by letter from the Commission on April 12, 1979 that the decision of the Commission not to proceed with further action was made in view of your own admissions and expressions of future intent to refrain from such activities. (See Exhibit `B', pp. 35-37.)
"At the Preliminary Hearing held before the Judiciary Commission on July 12, 1986, you admitted, while under oath, the incident described above and acknowledged that your conduct was improper in filing the charges and setting the bond in your court. (See Exhibit `B', p. 17.)
"B. By reason of the foregoing Section A, you have (1) violated Canons 1, 2(A) and (B) and 3 of the Code of Judicial Conduct, adopted by the Supreme Court of the State of Louisiana, effective January 1, 1976; and (2) you have engaged in willful misconduct relating to your official duty and persistent and public conduct prejudicial to the administration of justice that bring (sic) the Judicial Office into disrepute.
"CHARGE III
"A. That while you were performing your duties as Judge of the Breaux Bridge City Court, you issued an arrest warrant signed by you as Judge for the arrest of Anthony James Walters on criminal non-support charges while you were at the same time the attorney of record for Helen Jane Theriot Walters in the case entitled Helen Jane Theriot Walters v. Anthony James Walters, *1085 Docket No. 40179 of the 16th Judicial District Court for the Parish of St. Martin, State of Louisiana.
"Additionally, you have stated under oath (see Exhibit `B' p. 37-40) that you believe that there were other cases in which you had issued an arrest warrant for an individual who you were opposing in civil litigation for criminal charges instituted by your client in the civil litigation.
"Furthermore, in previous discussions with the Judiciary Commission, specifically referring to your letter to Mr. Eugene Murret, Chief Executive Officer, dated March 19, 1981, (see Exhibit `C'), you acknowledged that you felt when dealing with criminal matters involving your clients as complainants, you should recuse yourself as judge. These incidents represent a persistent failure on your part to uphold the integrity and independence of the Judiciary and are clear examples of impropriety.
"B. By reason of the foregoing Paragraph A, you have (1) violated Canons 1, 2(A) and (B) and 3(B)(2) of the Code of Judicial Conduct, adopted by the Supreme Court of the State of Louisiana, effective January 1, 1976; and (2) you have engaged in willful misconduct relating to your official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
"CHARGE IV
"A. That while you were presiding as Judge in the Breaux Bridge City Court, you filed a suit on open account in the Breaux Bridge City Court entitled W. Glenn Soileau v. Mark Edward Mouton, Docket No. 14480, (see Exhibit `D'), in an attempt to collect attorney's fees allegedly due you for legal services in a divorce proceeding.
"Furthermore, at the Preliminary Hearing held before the Judiciary Commission on 07/12/86, you acknowledged filing this suit in your own court as well as several similar lawsuits.
"B. By reason of the foregoing Section A, you have violated Canons 1, 2 and 3 of the Code of Judicial Conduct, adopted by the Supreme Court of the State of Louisiana, effective January 1, 1976; and (2) you have engaged in willful misconduct relating to your official duty and persistent and public conduct prejudicial to the administration of justice that brings the Judicial Office into disrepute."
After the hearing, in which respondent essentially admitted most of the allegations, the Commission found that the charges had been proved by clear and convincing evidence and concluded that respondent's conduct violated Canons 1, 2 A, 2 B and 3 of the Code of Judicial Conduct.[1] Further concluding that respondent
"has engaged in a series of acts of willful misconduct related to his official duty and in persistent and public conduct prejudicial *1086 to the administration of justice that brings the judicial office into disrepute, all over a period of several years and despite repeated admonitions by the Commission followed by expressions of intent on his part to conform to the appropriate standards of judicial conduct, followed by subsequent violations of the Code of Judicial Conduct",
the Commission recommended that respondent be suspended from office, without salary, for a period of one year. The case was then placed on the docket of this court, argued and submitted for decision.

CHARGE II[2]
On January 26, 1979, respondent was involved in a confrontation with Larry Daly in a barroom where the two were playing pool for a $100 wager. The incident, which occurred shortly after respondent assumed the office of Judge of the Breaux Bridge City Court, required the calling of a town policeman. Respondent informed the officer that he "ran the town" and that the officer had no authority to intervene. In retaliation to charges of simple battery filed by Daly before a justice of the peace, respondent filed a charge of simple battery against Daly in the Breaux Bridge City Court. As judge of that court, respondent set Daly's bail at $1,000.[3]
Respondent was called before the Judiciary Commission because of this incident. When respondent apologized for his conduct and expressed his resolve to refrain from further similar activities, the Commission decided not to file formal charges and simply reprimanded respondent for his conduct in a letter notifying him of that decision.
In the present proceeding, respondent admitted the incident and acknowledged that his conduct was improper. However, he objected to consideration of the incident in this proceeding on the grounds of double jeopardy, a stale and/or prescribed complaint, and his reelection in 1984 after the widely publicized 1979 incident. He also opposed consideration of the incident for the enhancement of the penalty for other conduct.
The constitutional guarantee against being twice put in jeopardy of life or limb for the same offense does not apply to a disciplinary proceeding against a judge. Moreover, the statutory protection of res judicata does not apply in this case. Respondent was never formally charged for the 1979 conduct, and the Commission was not precluded by law or by fundamental principles of fairness from considering the incident in this proceeding. Furthermore, the Commission is expressly authorized by Rule XXIII, § 3(d) of the Rules of the Supreme Court of Louisiana to refer to closed files of prior proceedings. Finally, Professional Discipline for Lawyers and Judges, Standards Relating to Judicial Discipline and Disability Retirement, § 4.13 (1979) permits use of closed files (1) to show that the problem is a continuing one and not just a rare occurrence if a new complaint is based on a similar occurrence, and (2) to determine the recommended sanction, whether the subsequent complaint is related or unrelated.
The subsequent misconduct in Charge I was similar in many respects to the misconduct in the 1979 incident, and the 1979 incident was highly relevant to show a continuing pattern of misconduct. Since the principal issue in the present proceeding is the sanction to be imposed, the Commission properly considered the 1979 incident in determining the sanction to be recommended. That the incidents were seven years apart and that respondent was reelected after the 1979 incident are simply *1087 factors to be considered by this court in possible mitigation.
In the 1979 incident, respondent violated Canons 1, 2 A, 2 B and 3 by failing to observe high standards of conduct necessary for the preservation of the integrity and independence of the judiciary, by failing to respect the law, by failing to conduct himself in a manner which promotes public confidence in the integrity and impartiality of the judiciary, by allowing his social relationships to influence his judicial conduct, and by failing to perform his judicial duties impartially. Respondent's conduct was particularly reprehensible because he used the power of his office to punish or frighten a private citizen with whom he was involved in a personal dispute. This "throwing one's weight around", especially when used "to show" the person who dared to cross the judge, simply cannot be condoned in a system whose objective is an independent and impartial judiciary. The conduct in Charge II alone would have warranted a significant sanction, but is particularly important in this proceeding to show that the subsequent Crawfish Festival incident was recidivist conduct.

CHARGE IV
On June 23, 1982, respondent filed a suit in the Breaux Bridge City Court to collect a professional fee owed to him. Respondent admitted this occurrence, but asserted that his office staff should have prepared the suit for filing in district court and that he signed the petition without noticing the name of the court. When he realized the problem in this suit and in two other similar suits, he instructed his staff (who had apparently sought to take advantage of the lower filing fees in City Court) that his personal suits were not to be filed in city court. He testified that the three suits had not been served and that no more personal suits have been filed in the court in which he presides.
Respondent presides as the only judge of the Breaux Bridge City Court. His filing a personal suit in that Court created an appearance of impropriety, inasmuch as the defendant would reasonably expect that he may not be treated impartially in the litigation. Of course, a judge has the right to use the judicial system for redress of his complaints, but the district court with concurrent jurisdiction in the matter was available for respondent to seek relief, without creating any appearance of impropriety.
Respondent's conduct in this charge violated Canons 1, 2 and 3 of the Code of Judicial Conduct. Nevertheless, the conduct appears to have been inadvertent, although careless, and the practice was discontinued as soon as it was discovered. Because the defendant was never served, no harm resulted from the incident, and respondent has never filed another personal suit in the City Court, according to his undisputed testimony. We therefore conclude that respondent's conduct in Charge IV, standing alone, does not warrant any sanction beyond a warning that such conduct is a violation of the Canons of Judicial Conduct and should be avoided in the future.

CHARGE III
At some unspecified date in 1986, respondent issued a warrant as judge of City Court for the arrest on criminal non-support charges of the husband of a client whom respondent was then representing in a civil action for separation.[4] Respondent admitted the conduct, but argued that signing *1088 a warrant is his ministerial duty, once probable cause is established, irrespective of his relationship with the person who is the subject of the warrant. He introduced numerous documents to show that he had issued warrants against his own clients, against persons who rented property from him, against the wife of his close friend, and against the daughter of his maid. He added that he always recused himself when such matters came to trial if there was a problem which he realized or which was called to his attention.
The problem here is one inherent in the often criticized practice of having limited jurisdiction judges who are permitted to practice law, a practice which was retained with limitations in the 1974 Constitution. Nevertheless, a judge who is permitted to practice law must be especially careful to refrain from conduct prejudicial to the administration of justice and to avoid even the appearance of impropriety. Code of Judicial Conduct, Canon 2 (1976).
Signing an arrest warrant is clearly not a purely ministerial duty. The exercise of considerable discretion is involved in determining, on the basis of a citizen's affidavit, whether to sign a document which results in another citizen's arrest. Additional discretion is involved in the attendant setting of bail. The judge exercising such discretion must carefully avoid the appearance that this exercise of discretion is influenced by the judge's professional alignment with the affiant or by the judge's adversary position with the person charged.
Furthermore, a judge's duty to refrain from judicial action which creates the appearance of impropriety does not apply only to action at formal hearing. When a judge takes action in his official capacity against a person who is then his opponent in other pending litigation and there is a close relationship between the pending litigation and the matter in which the judge takes the official action, such action is improper, whether the action is signing a warrant or hearing the case. The misuse or appearance of misuse of judicial power must be avoided at every stage of the proceeding.
Here, respondent's signing, in his judicial capacity, the document which directly caused the arrest of his opponent in pending marital litigation, especially when the criminal charges arose out the marital relationship, gave a significant appearance of impropriety.[5] No such appearance of impropriety flows from a judge's signing a warrant for the arrest of a client, friend or business associate.
Respondent's conduct violated the Code of Judicial Conduct, as set forth in the Commission's conclusions. However, since only the appearance of impropriety was established and since there was no evidence that the charged incident was other than a single occurrence, we conclude that respondent's conduct in Charge III, standing alone, does not warrant any sanction beyond a warning that such conduct is a violation of the Code of Judicial Conduct and should be avoided in the future.

CHARGE I
On May 3, 1986, respondent hit a law enforcement officer at the Crawfish Festival, reviled him and other persons on the festival grounds with obscene language, and proclaimed that he (respondent) "owned this goddamn town".[6] In a subsequent *1089 criminal proceeding in district court, respondent entered a plea of nolo contendere to charges of disturbing the peace and simple battery, being sentenced on the first charge to a fine of $100 and on the second charge to a fine of $200 and a suspended jail term of five days. He performed the community service which was ordered as a condition of probation and did additional community service on a voluntary basis.
This incident involved conduct similar to that in the 1979 pool hall incident, but in several respects was more serious. In addition to the recidivist nature of the conduct, this incident occurred at a popular public festival. Further, the misdemeanor was committed upon a uniformed law enforcement officer by a person well known in the small town as a member of the judiciary. Finally, respondent's assertion that he controlled the town was another indication (very similar to the 1979 incident) of his attitude that he owned, rather than served in, the office to which he has been elected and that he was above the law he had sworn in his oath of office to uphold. This public repetition of "throwing his weight around" is particularly disturbing.
We conclude that respondent's conduct in Charge I violated the Code of Judicial Conduct. We further conclude from the overall record that respondent's persistent and public conduct prejudicial to the administration of justice brought his judicial office into disrepute so as to warrant his suspension without salary. La.Const. art. V, § 25(C). In order for the public to maintain its confidence in the integrity and impartiality of the judiciary, a judge's conduct which undermines that confidence must be punished.

PENALTY
As to the length of the suspension, respondent himself conceded at the formal hearing that a suspension of three months was justified. The Commission, noting that the conduct was persistent over a period of several years despite repeated admonitions followed by expressions of intent to conform to acceptable standards, recommended a suspension of one year without salary.
There was substantial evidence in mitigation which was not mentioned in the Commission's findings and conclusions. Respondent himself reported the Crawfish Festival incident six days after its occurrence (and followed up the next month by reporting his "guilty" plea). In the preliminary investigation, he acknowledged that the pool hall incident and the Crawfish Festival incident were serious mistakes which occurred after he had been drinking alcoholic beverages for a long period of time without eating.[7] He testified that his embarrassment after the latest incident prompted him to consult a psychiatrist, who advised him to abstain totally from alcohol, and that he had not used alcohol since the date of the incident. He tendered *1090 the doctor's name and address and offered to furnish an authorization to release medical information.
At the formal hearing, respondent reiterated that the incidents were alcohol-related and that he had taken steps to prevent recurrance by seeking professional help and by quitting the use of alcohol. There was no evidence of any drinking by respondent in the five months between the Crawfish Festival incident and the formal hearing, or of any misconduct during the period. Respondent also points to, and the record supports, his total cooperation with the Commission throughout the investigation and hearing.
Considering the overall record, including the evidence in mitigation, we conclude that a suspension of six months without salary is appropriate in this case.
Accordingly, Judge W. Glenn Soileau, Judge of the City Court of Breaux Bridge, is hereby suspended from office, without salary, for a period of six months, effective upon the date of finality of this decision.
NOTES
[1] Canons 1, 2 and 3 provide in part:

"CANON 1
"A Judge Should Uphold the Integrity and Independence of the Judiciary
"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of his judicial independence.
"CANON 2
"A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
"B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interest of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
"CANON 3
"A Judge Should Perform the Duties of His Office Impartially and Diligently" (emphasis added)
[2] The charges, although not numbered in chronological order, will be discussed in the order of occurrence.
[3] The record is not clear whether respondent also signed the arrest warrant on the charge. However, Daly was apparently arrested on the charge since respondent set his bail. The record does establish that the amount of bail is preset for most offenses and that respondent was released on $250 bail after arrest on Daly's charges.
[4] Charge III additionally notified respondent that he had persisted in this type of conduct, referring to a previous discussion with the Commission that resulted in respondent's March 19, 1981 letter to the Commission. That letter dealt with a complaint by an attorney that respondent had threatened to use his power as City Judge to issue a warrant against the attorney's client, while at the same time representing the client's spouse in a community property settlement. At the formal hearing, respondent denied threatening the client (although he conceded he may have said he would obtain a restraining order). No further evidence was introduced, and there was no indication of any relationship between the pending civil action and the alleged threat to use judicial power. We therefore do not consider any conduct relating to this portion of Charge III.
[5] Such conduct could lead a reasonable person to believe that the judge's client filed the non-support charge on the judge's advice relating to the civil litigation and that the judge acted in furtherance of his client's interest by causing the arrest of the judge's adversary in the related litigation. A lay person also might reasonably infer that the lesson to be learned was that it is better to have the judge as your advocate (rather than your opponent) in marital litigation if there is a possibility of criminal prosecution for failure to perform marital obligations.
[6] The officer a deputy sheriff from another parish assigned to assist St. Martin Parish authorities at the Festival, wrote the following letter which was conceded as accurate by respondent:

"On the night of May 3rd, 1986 I was working the Crawfish Festival in Breaux Bridge. While inside the sub-station on the grounds, someone advised that a subject was on the grounds with a three wheeler. At this time Deputy Mike Martin and myself went outside and observed a white male and a black male by a three wheeler. The white male was on the bike.
"Deputy Mike Martin told the white male, that three wheelers where (sic) not allowed on the grounds, and to please park it behind the barricade. At this time the white male got off the bike and the black male got on it. The white male told us that he owned this `god damn town' and that we were `so and so mother fuckers'. I told him that his language was not needed, to just move the three wheeler. At this time the white male swung with his fist and hit me in the chest, then started running. Deputy Martin chased him and had to take him down. The subject was struggling so much that cuffs were used. I caught the black male. We then took both subjects into sub-station and turned them over to a local deputy. After advising the local deputy of what had happened, he asked if I was going to file charges. I told him that I wouldn't file charges, since this was an apparent conflict of local people. The subject being the city judge had no bearing on my decision not to file charges. I was not hurt and under normal circumstance (sic) I do not believe this would have not happened...."
[7] Special counsel for the Commission argued in this court that the excessive drinking worsened, rather than mitigated, the misconduct. We do not excuse excessive drinking by a judge. Rather, we recognize that excessive drinking can underlie other misconduct and that intoxication which impairs a person's capacity to conform his conduct to the requirements of law may under certain circumstances be a mitigating factor. Compare La. C.Cr.P. art. 905.5(e).