977 So.2d 314 (2008)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Solomon C. OSBORNE.
No. 2007-JP-00776-SCT.
Supreme Court of Mississippi.
January 31, 2008.
Rehearing Denied April 3, 2008.
*315 Luther T. Brantley, III, Darlene D. Ballard, Ayanna Batiste, attorneys for appellant.
Leonard McClellan, Jackson, attorney for appellee.
EN BANC.
WALLER, Presiding Justice, for the Court.
¶ 1. This appeal is taken from the Mississippi Commission on Judicial Performance's final Findings of Fact, Conclusions of Law, and Recommendations. Miss. Const. art. VI, § 177A; Miss. Comm'n on Judicial Performance Rule 10. The Commission recommends that Solomon C. Osborne of Greenwood, Mississippi, be suspended *316 from the office of County Court Judge of Leflore County, Mississippi, for ninety days, without compensation, and that he be assessed the costs of the proceedings against him ($2,525.08) for his actions in response to the repossession of an automobile jointly owned by his wife and mother-in-law on November 7, 2002. After our independent review, we agree with the Commission that Judge Osborne's conduct in violating various canons of our Code of Judicial Conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, thus causing such conduct to be actionable pursuant to the provisions of the Mississippi Constitution. Miss. Const. art. 6, § 177A. However, we disagree with the recommendation that he be suspended for ninety days. For the reasons discussed below, we find Judge Osborne's actions warrant suspension for one hundred eighty days, without compensation, and that he should be assessed the costs of the proceedings, and we enter judgment accordingly.

FACTS
¶ 2. The Commission included within its recommendation the following findings of fact:
The mother-in-law and the wife of Respondent jointly owned a Mercedes automobile which was financed with General Motors Acceptance Corporation[.] The title of the automobile was vested in the name of the Respondent's mother-in-law and his wife. The address on the title of the automobile was a Greenville, Mississippi address which was the address of Respondent's mother-in-law. Respondent is a resident of Greenwood, Mississippi and has been for several years. The payments on the Mercedes were in arrears of around Three Thousand Dollars ($3,000). General Motors Acceptance Corporation engaged the services of Christopher M. Reed (hereinafter "Reed") to repossess the automobile. The mortgage documents pledging the Mercedes automobile as collateral contained the usual and customary self-help repossession clause, permitting General Motors Acceptance Corporation or its agents permission to repossess the automobile without resort to judicial proceedings.
On November 7, 2002 Reed found the automobile parked near the office of Respondent. Reed hooked his tow truck to the Mercedes and drove away with it. One of Respondent's clients and close friend, Tennie [B]enford, a/k/a "Tony", who was in Respondent's office, notified Respondent of Reed's actions. Respondent and [B]enford jumped in [B]enford's automobile, gave chase to Reed for several blocks down the streets of Greenwood and when Reed stopped for a traffic sign [B]enford blocked Reed's course of travel with [B]enford's automobile, blocking that lane of traffic for the traveling public.
Respondent left [B]enford's automobile and began to beat the hood and cab of Reed's vehicle with his fists, climbing up onto Reed's vehicle he began to kick and beat on the top of Reed's vehicle and repeatedly instructed Reed to cut the Mercedes loose and cease his repossession efforts. Reed did not leave the cab of his vehicle until he had called the police on his cellular phone and they promptly arrived a the scene. When the police officers arrived Respondent told them to instruct Reed to "put his automobile down". Respondent then attempted to unhook the Mercedes from the tow truck. The first officer to the scene was Curtis Lee who advised Respondent that this was a civil matter and the officers could not get involved. Officer *317 Langley also arrived at the scene, inspected the documents held by Reed, told Respondent that the matter was a civil matter and the police could not get involved and instructed Reed to get in his truck and leave with the automobile.
When the officers told Reed to leave with the automobile, Respondent got into the Mercedes and engaged the brakes of the Mercedes effectively aborting Reed's repossession effort all in view of witnesses who had gathered, watching the proceedings.
Officer John Avent was also dispatched to the scene. He arrived at the scene "a couple of minutes after officer Lee". He found the Respondent agitated, upset and speaking in a loud voice attempting to enter the Mercedes. Avent advised Respondent that this was a civil matter, that the officers could not get involved, to which Respondent reminded him he was a judge and lawyer, that he knew the law much better than the officer and needed no advice from him. When officer Avent ordered Respondent to exit the Mercedes automobile, Respondent refused. Officer Lee, Avent's superior officer, who incredibly testified that he did not know Judge Osborne saw officer Avent speaking with Respondent, instructed Avent that he was handling this case. Officer Lee allowed Respondent to remove property from the Mercedes automobile, over the objection of Mr. Reed, even though it was the announced policy of the Greenwood Police Department not to become involved in a repossession matter, it being a civil matter.
Respondent never contacted his wife, and/or mother in law to determine if the payments were delinquent as alleged by Reed yet the delinquent account was later brought current by the payment of the delinquent payments. Respondent contends that he had no duty to determine if the payments were current or not. From the credible evidence Respondent knew and understood that Reed's actions were taken because the monthly payments on the Mercedes were in default even though Respondent testified that had he known the payments were past due ". . . all of this could've been avoided" (testimony of Respondent P. 291, L. 18-20)[.] Respondent also testified that under the decisions of our Courts he knew Reed could not take the automobile over Respondent's objection without a court order.
The confrontation between Respondent, Reed and the officers lasted from 45 minutes to an hour on the public streets of the City of Greenwood, in full view of the public, traffic was blocked and several people, other than the police, gathered at the scene. The matter was finally brought to a close when Reed, for some unexplained reason, was taken into custody by the Greenwood police, placed in handcuffs, thrown to the ground, injuring his head. Some of the bystanders came to Reed's aid and called Reed's wife, informing her that Reed had been injured. Reed left the scene in an ambulance dispatched by the Greenwood police department. Upon release from the hospital, Reed attempted to file assault charges against Respondent, went by the Greenwood police station, gave the officer on duty a report, but the report disappeared, and no action was taken as a result of this report. Even though Reed was issued two citations on the scene, these have not been pursued by the Greenwood Police Department. The only record of the citations is the copy given to Reed at the scene. An "Incident Report" was made and given to Officer Harris, Shift Captain at the time of the incident and now *318 Chief of Police, however this incident report has disappeared.
The next day, Reed was informed he needed brain surgery to repair an aneurysm the cause of which is not the subject of this inquiry. Reed is now receiving disability benefits as a result of the aneurysm and/or its cause.
As a result of the incident a judgment has been rendered [against] Respondent and in favor of Reed in the United States District Court in a civil action against the City of Greenwood, officer Curtis Lee and Judge Osborne. Depositions of the Defendants, Osborne and Lee were taken in the District Court case. Lee reviewed his deposition prior to his testimony in the matter sub judice but yet, could not remember many of the facts. He had been on the Greenwood Police Force in excess of a year and half when the incident occurred.
Osborne was appointed as County Court Judge in August, 2001 and had been serving on the County Court bench since that time. He had just been elected for his second term about two days prior to the incident. . . . [F]rom the credible evidence and the circumstances the Commission concludes that all of the officers who came to the scene were aware of who the Respondent was and his position as County Court Judge.
¶ 3. Judge Osborne contested the allegations in the complaint at the hearing and contests on appeal the recommended sentence. The following is a summary of the relevant disputed facts. Judge Osborne testified at the hearing that after he had been notified that the Mercedes was being towed, he ran out of his office and stood in front of the tow truck in protest of the self-help repossession. Judge Osborne further testified that he had "to jump out of the way to keep [the tow truck] from hitting [him]." Reed testified he left the scene without confrontation and traveled seventy-five to one hundred feet before the car's alarm sounded. He further testified that he was close to a quarter of a mile away when Benford and Judge Osborne gave chase. Benford testified that the tow truck was still outside the office when he and Judge Osborne walked outside, and that Judge Osborne tried to talk to Reed before he left. Benford did not state whether Judge Osborne stood in front of the tow truck in protest of the repossession.
¶ 4. The distance of the chase and the streets covered in the chase also were contested. Benford testified the chase was for two blocks, but that he had to speed throughout the chase and through at least one intersection with a traffic light. Osborne did not testify as to the distance of the chase, but insisted they ended up "right around the corner" from his office. It was not contested that Benford pulled in front of Reed as Reed was about to pass through the intersection of Church and Lamar or that Benford passed Reed, then pulled in front of Reed, cutting him off and blocking the lane of traffic for Reed and the traveling public with his automobile.
¶ 5. The testimony varied greatly as to Judge Osborne's demeanor after he exited Benford's vehicle and approached the tow truck. Reed testified that Judge Osborne was beating on the hood and cab of the tow truck, and that he was loud and combative. The testimony of Tom Chism, another witness at the scene, supports Reed's testimony. Benford denied observing these actions. Judge Osborne said he merely approached the truck and asked what was going on. Reed said he stayed inside the tow truck, called the police, and did not exit until the police arrived.
¶ 6. Judge Osborne next climbed into the back of Reed's tow truck and repeatedly demanded that Reed show him the papers *319 and put the Mercedes down. Certain testimony as to Judge Osborne's actions after police arrived was contested. Judge Osborne did not deny entering the Mercedes twice after Reed was instructed by police to leave with the car. He admitted that, when he did so, he told Officer Avent that "he knew the law better than he (Officer Avent) did." This was in addition to testimony that Judge Osborne told Officer Avent that he was a lawyer and a judge and that he didn't need anyone to quote him the law.
¶ 7. Judge Osborne admitted that he entered the Mercedes as Reed was starting to leave. However, he denied his actions were designed to impede Reed's ability to follow the officers' request. Judge Osborne testified that he subsequently got out of the Mercedes and reentered the vehicle as Reed tried to pull off again. Judge Osborne testified that his continued returns to the Mercedes were merely an effort to remove personal items from the vehicle. Reed testified that Judge Osborne did not remove any personal property until Officer Lee called another wrecker to tow away Reed's tow truck and the Mercedes. Reed, who by then had been arrested, said Judge Osborne slung his property out in the street toward Benford's automobile. No other witness testified that Judge Osborne threw his property on the street, though all confirmed Judge Osborne removed personal property from the Mercedes and loaded it in Benford's automobile.
¶ 8. Judge Osborne also contested events which followed Reed's attempt to leave as instructed by police. Reed testified he exited the tow truck and approached the Mercedes to place safety straps on the rear wheels to keep the car from coming off the lift. He said Judge Osborne exited the Mercedes, and the driver's side door was left open. With the door open, Reed walked up to the Mercedes and reached into the car, attempting to engage the "hazard lights." Reed testified that, as he was reaching in the vehicle, Judge Osborne slapped him on the back of the neck and "snatched" him out of the Mercedes, causing Reed's head to hit the "top of the car." Reed immediately turned to Officer Lee and demanded that Judge Osborne be arrested for assault. Officer Lee denied this happened, but admitted Reed may have asked him to arrest Judge Osborne. Judge Osborne denied he ever touched Reed.
¶ 9. It is uncontested that the standoff between Judge Osborne and Reed lasted forty-five minutes to an hour on the streets of the City of Greenwood, in full view of the public. The matter finally was brought to a close when Officer Lee decided to have both the Mercedes and the tow truck towed. Reed agreed to the towing but refused to give up his keys. Upon this refusal, Officer Lee arrested Reed for disorderly conduct and failure to comply with Officer Lee's request that he move the vehicle. Reed was handcuffed and placed in the back of Officer Lee's vehicle, an act Officer Lee admitted was contrary to standard procedure for repossession.
¶ 10. Though not at issue in this proceeding, Reed filed a complaint in the federal district court arising out of the repossession incident. It is confirmed that a final judgment in a civil action based upon these events is pending in the United States District Court, Northern District of Mississippi, Greenville Division, styled Chris Reed v. City of Greenwood, et al., Civil Action No. 4:02CV287-WAP-EMB, wherein Judge Osborne is named as a defendant, along with Officers Lee and Harris, and the City of Greenwood.
¶ 11. The Commission brought a formal complaint alleging that Judge Osborne violated Canons 1, 2 A, 2 B, & 4 A of the Code of Judicial Conduct of Mississippi *320 Judges. See Code of Judicial Conduct of Miss., Canons, 1, 2 A, 2 B, 4 A(2) (admonishing judges to uphold integrity and independence of judiciary, avoid impropriety and the appearance of impropriety, and conduct extra-judicial activities to minimize the risk of conflict with judicial obligations). The complaint also alleged that Judge Osborne's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Section 177A of the Mississippi Constitution of 1890. Following a hearing, the Commission issued its Findings of Fact, Conclusions of Law, and Recommendations.

STANDARD OF REVIEW
¶ 12. This Court reviews the recommendations of the Mississippi Commission on Judicial Performance de novo. Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993). "While it is true that this Court is the trier of fact in judicial misconduct proceedings and may impose additional sanctions, it nonetheless gives great weight to the findings of the Commission which has had the opportunity to observe the demeanor of the witness." In re Garner, 466 So.2d 884, 885 (Miss.1985). We are charged to render an independent judgment. Miss. Comm'n on Judicial Performance v. Peyton, 645 So.2d 954, 956 (Miss.1994).

DISCUSSION
I. WHETHER THE CONDUCT OF JUDGE OSBORNE CONSTITUTED WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE.
¶ 13. The Commission found by clear and convincing evidence that Judge Osborne's conduct violated Section 177A of the Mississippi Constitution of 1890 as amended, in that he engaged in "willful misconduct in office" and "conduct prejudicial to the administration of justice which brings the judicial office into disrepute[.]" Miss. Const., art. 6 § 177A(b), (e). This Court has held that acts which constitute willful misconduct in judicial office are abuses of the judge's office in such a manner that the judicial office is brought into disrepute.
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. . . . A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith. . . . Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
In re Quick, 553 So.2d 522, 524 (Miss.1989) (quoting In re Anderson, 412 So.2d 743, 745 (Miss.1982) (quoting In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977) (emphasis removed))).
¶ 14. Judge Osborne disagrees with the Commission's conclusions of law and contends that the Commission did not meet its burden of proving that he committed conduct prejudicial to the administration of justice. For the reasons set forth below, we find that the record contains sufficient evidence to warrant the conclusion that Judge Osborne's actions constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
¶ 15. Canon 2 A of the Code of Judicial Conduct states that a judge should avoid *321 impropriety and the appearance of impropriety in all activities. The commentary to Canon 2 A further elaborates that "[p]ublic confidence in the judiciary is eroded by irresponsible or improper conduct by judges. . . . A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly." Code of Judicial Conduct, Canon 2 A, Commentary. See also Miss. Comm'n on Judicial Performance v. Whitten, 687 So.2d 744, 747 (Miss.1997) (holding that judge acted with willful misconduct prejudicial to the administration of justice in his actions off the bench). The above prohibition applies not only to professional conduct but to personal conduct as well. Id. at 748. Judge Osborne's conduct failed to meet the high standards set by the Code of Judicial Conduct. This high standard is one which Judge Osborne personally has acknowledged as being greater than that of an ordinary citizen who is not a judge.
¶ 16. Canon 2 B states in pertinent part that "[j]udges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or other. . . ." It is undisputed that Judge Osborne attempted to stop the repossession of an automobile jointly owned by his wife and mother-in-law, and that he publicly referred to his superior knowledge of the law in the process of doing so.[1] Because of the involvement of the Greenwood Police, Judge Osborne's status as a local judge places his position of influence at issue. The Commission found by the credible evidence and the circumstances that all officers who came to the scene were aware of Judge Osborne's identity and position as a county court judge. We agree. Willful misconduct in office has been found in a judge's attempt to intimidate and interfere with law enforcement officers during a traffic stop. Miss. Comm'n on Judicial Performance v. Chambliss, 516 So.2d 506 (Miss.1987). Judge Osborne's reference to his knowledge of the law was a blatant attempt to use his office either as an advantage with the law enforcement officers at the scene, or as an intimidation tactic. Id. Furthermore, because the automobile was not titled in his name, but in the name of his wife and mother-in-law, these actions were in an effort to lend the prestige of his office to assist his family members. At the hearing, Judge Osborne asserted that he was unaware of the payment arrearage, that he never contacted the Mercedes's owners to determine if the payments were delinquent, and contends he had no duty to determine if the payments were current or not.
¶ 17. Canon 4 A provides that "[a] judge shall conduct all of the judge's extra judicial activities so that they do not . . . demean the judicial office. . . ." As this Court stated in Comm'n on Judicial Performance v. Gunn:
The official integrity of the justice court judges is vitally important, for it is on that level that most citizens have their only experience with the judiciary. In Re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss.1985). Therefore, it is imperative for justice court judges to conduct themselves with the utmost diligence in order to uphold the public's confidence.
*322 Gunn, 614 So.2d at 389-390. Judge Osborne's position as county court judge placed upon him the same responsibility as that expected and imposed on Gunn. This includes personally observing high standards of conduct in his professional and personal life that most ordinary citizens are not required to meet, and accepting restrictions on his conduct that ordinary citizens might view as burdensome. Judge Osborne's actions in regard to this incident showed that he acted intentionally, or with gross unconcern for his conduct in violating the canons of the Code of Judicial Conduct and thereby bringing his judicial office into disrepute.
¶ 18. Judge Osborne contends that all of his actions were lawful because he was engaged in an objection to self-help repossession. Unless otherwise agreed, a secured party is authorized upon default to take possession of collateral. Hester v. Bandy, 627 So.2d 833, 841 (Miss.1993). In taking possession, a secured party may proceed without judicial process, if he or she can do so without breaching the peace, or may proceed by action. Miss.Code Ann. § 75-9-503 (1972), revised and recodified at, § 75-9-609(a)(1),(b)(2) (Rev. 2002). Osborne contends that because a breach of peace was inevitable, repossession was not proper without judicial process. Hester, 627 So.2d at 841 (repossession company found liable for breach of peace when its agents, attempting to lawfully repossess a vehicle subject to security interest, were confronted by the debtor).
¶ 19. A review of what does and does not constitute a "breach of peace" is instructive. Entering a debtor's private driveway to repossess collateral without use of force does not constitute a breach of peace. Dearman v. Williams, 235 Miss. 360, 109 So.2d 316, 320-321 (1959) (emphasis added). See also Butler v. Ford Motor Credit Co., 829 F.2d 568 (5th Cir.1987); Martin v. Cook, 237 Miss. 267, 114 So.2d 669, 670 (1959). This Court also has held that a creditor who repossesses collateral despite the fact that a permissive user has withheld his or her consent or has strongly objected to the repossession, did not breach the peace. Commercial Credit Co. v. Cain, 190 Miss. 866, 1 So.2d 776, 777-778 (1941). However, the right to take property from the possession of the other party does not justify the use of force to take it. Martin, 114 So.2d at 671. Repossession must be completed without force or violence, and if possession cannot be so obtained, then resort must be had to the processes of the courts. Id.
¶ 20. A review of the facts indicates that a breach of peace undoubtedly occurred. While the point at which Judge Osborne first voiced his objection is disputed, it is uncontested that Reed attached the Mercedes to his tow truck and proceeded through the streets of Greenwood. After traveling some distance, Judge Osborne and Benford intervened to stop Reed's repossession efforts. At some distance from his office, Judge Osborne blocked Reed's travel, exited the vehicle and protested the repossession of his wife and mother-in-law's vehicle. The record demonstrates behavior on the part of Judge Osborne which resulted in a breach of peace. Given our deference to the Commission's findings of fact, we find its recital to be supported by the evidence, even though that evidence was vigorously contested.
¶ 21. Judge Osborne asserts that his public objection to the repossession was merely an exercise of rights to which he was entitled under Mississippi law, citing Ivy v. General Motors Acceptance Corporation, 612 So.2d 1108 (Miss.1992), in support. In that case, Ivy defaulted on his van loan. Freeman and Baker drove to Ivy's home. To secure the vehicle, they *323 had to travel about a quarter-mile up a gravel driveway, past a chicken house, to Ivy's mobile home, where the van was parked. Freeman and Baker hitched the van to their tow truck and towed it away. When Freeman and Baker reached the end of Ivy's driveway, Freeman stopped the tow truck and checked on the van. At that point, Freeman noticed someone running from the chicken house toward the mobile home. Freeman jumped into the tow truck, drove off Ivy's property and onto the adjacent road. They drove a short distance and approached an intersection. Ivy pulled in front of the tow truck, causing a "slight" collision. Id. Once Ivy got his personal belongings from the van, Ivy and the repossessors departed the scene with no further incident. This Court determined that the repossessing party had caused a breach of peace, and affirmed a verdict awarding $5,000 in damages to the debtor. Id.
¶ 22. A secured party seeking to repossess its collateral without the aid of the courts is justly prohibited from doing so through breach of the peace. Miss.Code Ann. § 75-9-609(b)(2) (Rev.2002). This court's precedent and the Uniform Commercial Code give a debtor the ability peacefully to protest a secured party's self-help repossession. This court's precedent in Hester, Martin, and Ivy establishes a low threshold of conduct which constitutes a breach of the peace in repossession. However, neither the secured party nor the debtor is permitted to breach the peace under Mississippi law. Both the secured party and the debtor have access to the courts to recover collateral or damages from repossession without resort to the threat of (or actual) physical violence, or any other act beyond peaceful protest. See Miss.Code Ann. §§ 75-9-601(a); 75-9-625 (Rev.2002).
¶ 23. Judge Osborne contends the holding in Ivy gives him the right to protest self-help repossession in the manner he did. Accordingly, Judge Osborne contends that he should not face punishment for exercising a right. The contention that one has the "right" to object to self-help repossession by causing a breach of peace is without merit and completely unsupported by the law.
¶ 24. While Ivy has some factual parallels to the instant case, it is nonetheless distinguishable on several different levels. In Ivy, the van was repossessed well onto the debtor's property. Also, the protest to the repossession was made by the debtor, who initially believed the vehicle was being stolen. Here, the Mercedes automobile was owned jointly by Judge Osborne's wife and mother-in-law. Not only was Judge Osborne's name absent from the title, the address on the title was in a completely different city from that in which Judge Osborne lived and in which the vehicle was then located. Judge Osborne was no more than a permissive user of the automobile. Once Ivy was advised of the repossession, he got his personal belongings out. Thereafter, Ivy left and the repossessors left the scene without further incident. Ivy, 612 So.2d at 1110.
¶ 25. The record is undisputed that a lengthy public argument ensued between Reed and Judge Osborne that involved the police and resulted in injuries. Judge Osborne caused a confrontation with Reed and stopped Reed from leaving the scene. When the police attempted to intervene, Judge Osborne invoked his judicial office and impeded a quick and peaceful resolution.
¶ 26. In considering Judge Osborne's alleged judicial misconduct, the only subject of inquiry for this Court is the conduct of Judge Osborne. A right to object to self-help repossession was not a justification *324 for his actions. Judge Osborne failed to observe high standards of conduct and invoked his office in objecting to the repossession of the automobile jointly owned by his wife and mother-in-law.
II. WHETHER JUDGE OSBORNE SHOULD BE SUSPENDED FROM OFFICE FOR NINETY DAYS WITHOUT PAY AND ASSESSED THE COSTS OF THE PROCEEDINGS.
¶ 27. The Commission concluded that Judge Osborne: (1) violated Canon 1 of the Mississippi Code of Judicial Conduct by failing to observe high standards of conduct in the manner in which he objected to the automobile of another being repossessed; (2) violated Canon 2 A of the Mississippi Code of Judicial Conduct by abusing his power as a judge, influencing the actions of the Greenwood policeman on the scene, and eroding the public confidence in the judiciary; (3) violated Canon 2 B of the Mississippi Code of Judicial Conduct by using his position as a judge to impede the repossession of the automobile owned by his mother-in-law and his wife, without concern or investigation of the status of the payments on the automobile; and (4) flaunted his power as a judge and demeaned the office of county court judge. Upon these conclusions, the Commission recommends that Judge Osborne be suspended from office without pay for a period of ninety days and assessed costs of these proceedings. Judge Osborne asserts that this penalty is too harsh, and that he should receive no more than a public reprimand.
¶ 28. In accordance with Section 177A of the Mississippi Constitution and Rule 10 of the Rules of the Commission on Judicial Performance, as interpreted by this Court, the Commission is charged with recommending disciplinary sanctions, and the Court, based upon a review of the entire record, must determine the appropriate sanction. This Court has the sole power to impose sanctions. In Re Quick, 553 So.2d 522, 527 (Miss.1989).
¶ 29. The sanctions available to us when disciplining a judge include: (1) removal from office; (2) suspension from office; (3) fine; and (4) public censure or reprimand. Cf. Miss. Comm'n on Judicial Performance v. Teel, 863 So.2d 973, 975 (Miss.2004) (citing Miss. Const., art. 6, § 177A); Miss. Comm'n on Judicial Performance v. Walker, 565 So.2d 1117, 1128-32 (Miss. 1990) (compiling list of judicial performance sanctions in Mississippi). As we have held previously, the appropriate "sanction should recognize the misconduct, deter and discourage similar behavior, preserve the dignity and reputation of the judiciary, and protect the public." Miss. Comm'n on Judicial Performance v. Sanders, 708 So.2d 866, 877 (Miss.1998).
¶ 30. In order to consistently achieve the goals of judicial discipline set forth in Sanders, this Court has held that the appropriateness of judicial sanctions must be based on six factors which have been referred to as the "Gibson factors." Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
(1) Length and character of public service.
¶ 31. Judge Osborne was appointed to the bench by former Governor Ronnie Musgrove and was sworn into office on August 8, 2001. He was elected for a full term in the November 2002 general election, and this incident occurred just two days later. The record holds no evidence of the character of his public service.
(2) Whether there is any prior case law on point.
¶ 32. There is no prior judicial precedent factually on point, however some prior *325 cases have involved off-the-bench conduct somewhat analogous to this case. In In re Chambliss, 516 So.2d 506 (Miss. 1987), Justice Court Judge Charlie R. Chambliss was found to have attempted to intimidate and interfere with law enforcement officers during traffic stops. Chambliss attempted to have two different officers reassigned after the officers wrote him a ticket. Id. at 507. In another case, Chambliss resisted arrest, attempted to flee from the officer, and attempted an assault. Id. The Commission and Chambliss agreed upon a Finding of Fact and Recommendation which proposed public reprimand and $1,000 fine. This Court accepted that agreement. Similarly, this Court accepted the recommendation of the Commission that Justice Court Judge Billy Ray Brown be removed from office and assessed the costs of the proceedings after he used his position as judge to influence the outcome of domestic violence charges brought against his son. Miss. Comm'n on Jud. Perf. v. Brown, 918 So.2d 1247 (Miss.2005).
¶ 33. In Mississippi Commission on Judicial Performance v. Whitten, 687 So.2d 744 (Miss.1997), Municipal Court Judge John W. Whitten, III, was publicly reprimanded, fined $2,500 and assessed costs of the proceeding. Whitten, at gun point, stopped a vehicle on a neighbor's property and fired shots at the tires of the automobile in which three young men were traveling. After the vehicle was stopped, the occupants were ordered onto the ground, handcuffed, and detained for a period of time. Whitten, along with his associates, interrogated the young men and threatened them with bodily harm. The detainees were eventually released with a promise that they would not file anything against Whitten for the "misunderstanding." Id. at 746.
¶ 33. Also, in Mississippi Commission on Judicial Performance v. Bishop, 761 So.2d 195 (Miss.2000), Kevin B. Bishop, a justice court judge, was accused of having an inappropriate relationship with a fifteen-year-old girl. Though the Commission did not find sufficient evidence to support that allegation, there was a finding that Bishop conspired with a local jailor at the county jail to harass and intimidate the family of the minor and that Bishop had "confronted, interrogated, and intimidated" a high school boy who had allegedly made improper sexual remarks to the minor female. Id. at 197. The Commission recommended a public reprimand, a fine of $1,500 and assessment of costs. Id. at 198. This Court found Bishop's conduct warranted a ninety-day suspension in addition to the recommendations of the commission. Id.
¶ 35. This Court previously has considered the appropriate discipline when a judge creates a public disturbance. We imposed a ninety-day suspension without pay, fined, and assessed costs of the proceedings against a justice court judge who, in full view of the spectators in his courtroom, left the bench, verbally attacked a party appearing before him, and physically assaulted the handcuffed defendant. Miss. Comm'n. on Judicial Perf. v. Guest, 717 So.2d 325, 326, 332 (Miss.1998). We find persuasive authority from Louisiana, where the Supreme Court of Louisiana imposed a six-month suspension without pay against a judge whose several instances of disreputable public conduct, among other charges, warranted the sanction. In Re: Judge W. Glenn Soileau, 502 So.2d 1083, 1090 (La.1987).
¶ 36. An analysis of all of the above cases taken together aids the determination of a proper punishment. We will draw authority from these cases when imposing discipline below.
*326 (3) The magnitude of the offense and the harm suffered.
¶ 37. The magnitude of the offense and the harm suffered were relatively great and resulted from an abuse of Judge Osborne's office. Judge Osborne's actions in response to the repossession, in which he had no legal interest, caused a breach of the peace, allowed conditions to unfold that resulted in injuries to Reed, and constituted an improper breach of peace carried out to thwart the lawful execution of self-help repossession.
(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 38. This misconduct is not the first recorded for Judge Osborne, as he has been disciplined by this Court in the past for practicing law as a judge in violation of Mississippi Code Annotated Sections 9-1-25 and § 9-9-9 (Rev.2002). In Mississippi Commission on Judicial Performance v. Osborne, 876 So.2d 324 (Miss.2004), Judge Osborne was publicly reprimanded and ordered to pay the costs of that proceeding. A second offense undoubtedly warrants a harsher penalty. See Miss. Comm'n on Judicial Performance v. Brown, 918 So.2d 1247, 1256 (Miss.2005); Miss. Comm'n on Judicial Performance v. Byers, 757 So.2d 961 (Miss.2000); Miss. Comm'n on Judicial Performance v. Sanders, 749 So.2d 1062 (Miss.1999).
(5) Whether moral turpitude was involved.
¶ 39. Moral turpitude was involved in this offense. "Moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Gibson, 883 So.2d at 1158. In Mississippi Commission on Judicial Performance v. Sanford, 941 So.2d 209, 217 (Miss.2006), this Court revisited the issue of moral turpitude and stated: "This case involves some of the basic tenets of daily living in a civil society, such as living by standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others." The Court noted that the abuse of a judge's position for personal reasons is "quite serious." Judge Osborne's actions constituted an abuse of power for personal gain and therefore constituted moral turpitude. See, e.g., Byers, 757 So.2d at 961; Sanders, 749 So.2d at 1062.
(6) The presence or absence of mitigating or aggravating circumstances.
¶ 40. Aggravating circumstances are present in that Judge Osborne has shown no remorse or acknowledgment of the impropriety of his conduct in this matter. Judge Osborne has continued to defend his actions as being proper.
¶ 41. In considering the appropriate discipline for Judge Osborne's conduct, several factors about this matter are particularly important. First, Judge Osborne's actions occurred in full view of the public over an extended period of time. We find this similar to the conduct discussed in Guest and Soileau, where the sanction ranged from a ninety-day suspension to a six-month suspension. Guest, 717 So.2d at 332; Soileau, 502 So.2d at 1090. Second, Judge Osborne invoked the authority of his office during the event to thwart the attempt by police to peacefully resolve the matter. We find this similar to Chambliss, where we publicly reprimanded and fined the judge who attempted to interfere with and intimidate police officers. *327 Chambliss, 516 So.2d at 506. It is also similar to Bishop, where the judge's intimidation of a minor warranted a ninety-day suspension as sanction for the conduct. Bishop, 761 So.2d at 198. Third, Judge Osborne did not act on his own behalf, but that of his wife and mother-in-law. In doing so, Judge Osborne used his office for the direct personal gain of family and indirect personal gain. This is similar to the conduct in Brown, in which we removed the judge from office for using his office to aid his son. Brown, 918 So.2d at 1259. We are certain that the combination of these factors warrants a substantial penalty.
¶ 42. Finally, from our review of the record, we cannot see where Judge Osborne has acknowledged the detrimental effect these actions had upon the integrity of our judicial system. This Court is charged by our Constitution with upholding the dignity and integrity of the courts of this state. There are numerous cases of judicial discipline in which the respondent judges either acknowledged the deleterious consequences of their actions or cooperated with the Commission in the performance of its duties, or both. See, e.g., Chambliss, 516 So.2d at 506. Where this occurred, we could be relatively certain the respondents were cognizant of the duties the position of trust imposed upon them, and assured that such conduct would not be repeated. In this instance, we act without such assurance.
¶ 43. We find the appropriate sanction for Judge Osborne's conduct lies between the sanctions imposed in Guest and Brown. Although the conduct is arguably similar to that in Whitten, we find aggravating circumstances present in Judge Osborne's conduct which require an enhanced punishment. His conduct occurred in public, he invoked his office for intimidation, and he acted for the direct personal gain of family and indirect personal gain. We have no assurance that Judge Osborne recognizes or accepts the standards of behavior imposed upon him as a judge or that wrongdoing such as this will not reoccur in the future. We find this conduct warrants a suspension for one hundred eighty days, without pay, and the assessment of the costs of the proceedings against Judge Osborne.

CONCLUSION
¶ 44. Judge Osborne's actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. Accordingly, after considering the Gibson factors, we partially adopt the recommendation of the Commission and suspend Judge Osborne from office for a period of one hundred eighty days, without compensation, and assess the costs of these proceedings, $2525.08, against him.
¶ 45. COUNTY COURT JUDGE SOLOMON C. OSBORNE OF LEFLORE COUNTY IS HEREBY SUSPENDED FROM OFFICE, WITHOUT COMPENSATION, FOR ONE HUNDRED EIGHTY (180) DAYS FROM AND AFTER THE ISSUANCE OF THE MANDATE IN THIS CASE, AND IS ASSESSED COSTS IN THE AMOUNT OF $2,525.08.
SMITH, C.J., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. DIAZ, P.J., AND EASLEY, J., NOT PARTICIPATING.
GRAVES, Justice, Concurring in Part and Dissenting in Part:
¶ 46. I agree with the majority's holding that Judge Osborne's actions constituted *328 willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute, but I disagree with the majority's decision to only partially adopt the recommendation of the Commission on Judicial Performance. "`This Court conducts de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Commission.'" Miss. Comm'n on Judicial Performance v. Fowlkes, 967 So.2d 12, 14 (Miss.2007) (quoting Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 303 (Miss.2007)). Yet, despite the deference which should be given to the Commission's recommendations, there is an escalating trend of this Court to ignore those recommendations. See Miss. Comm'n on Judicial Performance v. Fowlkes, 967 So.2d 12 (Miss.2007) (this Court found the Commission's recommendation insufficient and ordered a public reprimand, suspension for thirty days without pay, and payment of costs); Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300 (Miss.2007) (the Commission recommended public reprimand and assessment of costs, and this Court adopted that recommendation and also suspended Gordon for thirty days without pay); Miss. Comm'n on Judicial Performance v. Ivory E. Britton, 936 So.2d 898 (Miss.2006) (the Commission recommended a public reprimand, and this Court ordered a public reprimand, a thirty-day suspension without pay, and costs assessed to Britton); Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209 (Miss.2006) (the Commission recommended a public reprimand and assessment of costs, and this Court ordered a public reprimand, assessment of costs, and a thirty-day suspension without pay); Miss. Comm'n on Judicial Performance v. Justice Court Judge T.T., 922 So.2d 781 (Miss.2006) (among other recommendations, the Commission recommended a public reprimand, and this Court adopted the Commission's recommendations in part but imposed a private reprimand); Miss. Comm'n on Judicial Performance v. Martin, 921 So.2d 1258 (Miss.2005) (the Commission recommended that Judge Martin be publically reprimanded and suspended for thirty days without pay, and this Court dismissed the case with prejudice); Miss. Comm'n on Judicial Performance v. Former Judge U.U., 875 So.2d 1083 (Miss.2004) (the Commission recommended a public reprimand, a fine of $500, and that Former Judge U.U. be assessed costs of the appeal in amount of $953.95, and this Court imposed a private reprimand and assessed the former judge the costs of the appeal in the amount of $953.95); Miss. Comm'n on Judicial Performance v. Wilkerson, 876 So.2d 1006 (Miss.2004) (rejecting the Commission's findings and recommendation, and dismissing the Commission's complaint and the case with prejudice); Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004) (the Commission recommended that Gibson be publically reprimanded and assessed costs of the proceedings, and this Court adopted the recommendation of the Commission and further imposed a $330 fine); Miss. Comm'n on Judicial Performance v. Blakeney, 905 So.2d 521 (Miss.2004) (the Commission recommended a public reprimand, and this Court imposed a private reprimand).
¶ 47. As correctly quoted by the majority, "[w]hile it is true that this Court is the trier of fact in judicial misconduct proceedings and may impose additional sanctions, it nonetheless gives great weight to the findings of the Commission which has had the opportunity to observe the demeanor of the witness." In re Garner, 466 So.2d *329 884, 885 (Miss.1985). The Commission or Committee enjoys the same benefits as a jury sitting as a finder of fact, those being the ability to hear all of the testimony first-hand, to observe the demeanor of the witnesses, and to weigh the credibility of such witnesses. With all of that knowledge, the Commission is able to mete out a punishment which is commensurate with the infraction and make its recommendation to this Court.
¶ 48. In the instant case, the matter came on for hearing before a Committee comprised of Judge Melvin J. Ray, Judge Henry L. Lackey, and Rick J. Coulter, who unanimously recommended that Judge Osborne be suspended from the office of County Court Judge for ninety days, without compensation, and that he be assessed with all costs of the proceeding. On March 9, 2007, the Commission unanimously accepted and adopted the Committee's Findings of Fact and Recommendation. When this Court disregards the recommendation of the Commission, which has become increasingly more common, as evidenced by the above-cited cases and today's case, we are effectively rendering the work of the Commission moot and valueless.
¶ 49. Secondly, today's opinion deprives the citizens of Mississippi of their right to have an official, elected by the citizens, serving in the capacity in which they chose him to serve. Effectively, this Court has suspended the will of the electorate for one hundred and eighty days. I recognize that suspension and removal are punishments which can be imposed in the most egregious situations of judicial misconduct, however, the punishment in the instant case is harsh and provides for a suspension which is twice as long as the one recommended by the Mississippi Commission on Judicial Performance.
¶ 50. For the foregoing reasons, I respectfully concur in part and dissent in part.
NOTES
[1] Reed and Officer Avent testified that Judge Osborne specifically referred to his position as a judge in reciting his knowledge of law. Judge Osborne conceded only that his reference to knowledge was based on his being a lawyer.